# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| DIANA MEY, individually and on behalf of a class of all persons and entities similarly situated, | |
| *Plaintiff*, | CASE NO. 5:14-CV-123 JPB |
| v. | |
| VENTURE DATA, LLC, and PUBLIC OPINION STRATEGIES, LLC, | |
| *Defendants.* | |

## DEFENDANT PUBLIC OPINION STRATEGIES, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFF'S EXPERT REPORT AND TESTIMONY

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... II

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I. THE DAUBERT STANDARD ................................................................................... 1

II. MR. HANSEN'S REPORT AND TESTIMONY SHOULD BE EXCLUDED ..................... 2

    A. Mr. Hansen Is not Qualified to Testify as an Expert ............................................ 2

        1. Mr. Hansen lacks sufficient or appropriate education or credentials ......... 3

        2. Mr. Hansen lacks sufficient or appropriate professional experience ......... 3

    B. Mr. Hansen's Testimony Comprises only Testimony within the Knowledge of an Average Layperson or Legal Conclusions ............................... 5

        1. Mr. Hansen's testimony regarding the call detail records is not beyond the knowledge of an average layperson ........................................ 5

        2. Mr. Hansen's testimony on the ATDS issue amounts to impermissible legal conclusions ................................................................ 6

    C. Mr. Hansen's Methods Are Unreliable and Rest on an Inadequate Factual Foundation ......................................................................................... 7

        1. Mr. Hansen's ATDS Testimony ................................................................. 8

        2. Mr. Hansen's Testimony Concerning the Call Detail Records .................. 9

CONCLUSION ...................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Balschmiter v TD Auto Finance LLC*,
   No. 13-cv-01186 (E.D. Wis.) ................................................................................................ 4

*Coleman v. Union Carbide Corp.*,
   No. 2:11-0366, 2013 WL 5461855 (S.D. W.Va. Sept. 30, 2013) .......................................... 1

*Daubert v. Merrell Dow Pharamaceuticals, Inc.*,
   509 U.S. 579 (1993) .............................................................................................................. 8

*Dominguez v. Yahoo!, Inc.*,
   2017 WL 390267 (E.D. Pa. Jan. 27, 2017) ........................................................................... 4

*E.E.O.C. v. Freeman*,
   778 F.3d 463 (4th Cir. 2015) ................................................................................................. 2

*Henderson v. Corelogic Nat'l Background Data, LLC*,
   No. 3:12-cv-97, 2016 WL 354751 (E.D. Va. Jan. 27, 2016) ............................................. 5, 6

*Higginbotham v. KCS Int'l, Inc.*,
   85 F. App'x. 911 (4th Cir. 2004) ........................................................................................... 2

*In re Blood Reagents Antitrust Litig.*,
   783 F.3d 183 (3d Cir. 2015) .................................................................................................. 1

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   644 F.3d 604 (8th Cir. 2011) ................................................................................................. 1

*Krakauer v. Dish Network, L.L.C.*,
   2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ....................................................................... 1

*Legg v. Voice Media Group, Inc.*,
   2014 WL 1767097 (S.D. Fla. May 2, 2014) ......................................................................... 6

*Marks v. Crunch*,
   55 F. Supp.3d 1288, 1293–94 (S.D. Cal. Oct. 23, 2014) ...................................................... 4

*Marks v. Crunch San Diego*,
   No. 14-cv-00348 (S.D. Cal.) ................................................................................................. 4

# **TABLE OF AUTHORITIES**

**Page(s)**

*Molnar v NCO Financial Systems*,
   No. 13-cv-00131 (S.D. Cal.) .................................................................................................4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   716 F. Supp.2d 220 (S.D.N.Y. 2010) ................................................................................3, 11

*Sher v. Raytheon Co.*,
   419 F. App'x 887 (11th Cir. 2011) .......................................................................................1

*Strauss v. CBE Group, Inc.*,
   2016 WL 2641965 (S.D. Fla. Mar. 23, 2016) ....................................................................4, 6

*Swaney v Regions Bank*,
   No. 13- cv-0544 (N.D. Ala.) ..................................................................................................4

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
   878 F.2d 791 (4th Cir. 1989) ..............................................................................................2, 3

*Waine-Golston v. Time Warner Entertainment-Advance/New House Partnership*,
   2013 WL 1285535 (S.D. Cal. Mar. 27, 2013) ......................................................................5

**OTHER AUTHORITIES**

FED. R. CIV. P. 702 ......................................................................................................................5

Federal Rule of Evidence 702 ................................................................................................2, 5

## INTRODUCTION

Ms. Mey and her counsel have retained Jeffrey A. Hansen as a purported expert in support of Ms. Mey's motion for class certification. Mr. Hansen's testimony is twofold. First, he counsels this Court that the dialing systems used by Venture Data are Automatic Telephone Dialing Systems under the TCPA. Second, he compares spreadsheets of telephone numbers to identify numbers assigned to wireless telephones on the date of the call. Ex. A, Report of Jeffrey Hansen ("Hansen Rpt.").

POS asks this court to exclude Mr. Hansen's testimony because (a) he is not qualified to be an expert witness in this case; (b) his testimony either amounts to legal conclusions or does not go beyond the skill of an average layperson; and (c) his methods are unreliable. Mr. Hansen is nothing more than a hired gun who submits cookie-cutter expert reports in numerous TCPA cases with little to no regard for the specific facts of each case.

## ARGUMENT

I. **THE DAUBERT STANDARD**

This motion is appropriate at this time because Plaintiff's motion for class certification will soon be fully briefed. "When an expert's report is critical to class certification, a court must perform a full *Daubert* analysis and rule on any challenge to an expert's report or to the reliability of information provided by an expert before ruling on a class certification motion." *Krakauer v. Dish Network, L.L.C.*, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) (quoting *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) (per curiam)) (internal quotations omitted); *see also In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 627–28 (8th Cir. 2011); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890–91 (11th Cir. 2011); *Coleman v. Union Carbide Corp.*, No. 2:11-0366, 2013 WL 5461855, at *22–23 (S.D. W.Va. Sept. 30, 2013) (Copenhaver, J.)

("The court is thus not prohibited from addressing the defendants' Daubert challenge at the class certification stage.").

Federal Rule of Evidence 702 authorizes expert testimony only if the expert is qualified and the testimony (i) "is based upon sufficient facts," (ii) "is the product of reliable principles and methods," and (iii) would be helpful to the fact-finder to determine a disputed issue. FED. R. EVID. 702. <u>Plaintiff bears the burden of establishing the reliability and admissibility of Mr. Hansen's testimony and methodology by a preponderance of the evidence.</u> *See, e.g., Higginbotham v. KCS Int'l, Inc.*, 85 F. App'x. 911, 915 (4th Cir. 2004).

"[T]he district court must act as a gatekeeper" and "probe the reliability and relevance of expert testimony any time 'such testimony's factual basis, data, principles, methods, or their application are sufficiently called into question.'" *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).

II.   **MR. HANSEN'S REPORT AND TESTIMONY SHOULD BE EXCLUDED.**

    A.   **Mr. Hansen Is Not Qualified to Testify as an Expert.**

Mr. Hansen's summarizes his qualifications as follows: he is an "IT certified professional with over 25 years of extensive troubleshooting experience." Ex. B, Hansen Resume. Mr. Hansen seeks to bring his "troubleshooting experience" to bear in a matter that he is wholly unqualified to address. Mr. Hansen's chief reason for being qualified to testify in this case is that he claims to "have served as an expert or consultant in more than 150 TCPA" cases. Hansen Rpt. ¶ 4. But one does not become an expert simply by testifying. *See, e.g., Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) ("[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying."). And one certainly does not become an expert simply by submitting numerous "expert" reports. Looking past the red herring of the sheer volume Mr. Hansen's previous proffered testimony, it is evident that he

is not qualified to serve as an expert witness. Moreover, POS is unaware of any case where Mr. Hansen was deemed qualified as an expert and his testimony adopted by a court.

### 1. Mr. Hansen lacks sufficient or appropriate education or credentials.

Mr. Hansen's credentials are sorely lacking when compared to the usual expert testifying in federal court. Mr. Hansen did not graduate from college and has never authored a single article on the technical specifications of an ATDS. *See generally* Hansen Rpt. Hansen's education is limited to vocational schools and alleged certifications for proficiency in various software programs. *Id*. Indeed, Hansen lists a set of Microsoft and other technical certifications in his CV and also recites them in his expert report. Hansen Rpt. ¶ 10. None of his education relates to his testimony on the ATDS issue.

### 2. Mr. Hansen lacks sufficient or appropriate professional experience.

Mr. Hansen's only professional experience related to dialing systems appears to be limited to vague references to his consulting work and his work as an expert witness in TCPA cases.[1] *See* Hansen Resume. That Mr. Hansen's experience purportedly qualifying him to testify is solely related to previous involvement as a litigation consultant should give this Court pause. "The only category of experience that courts are generally wary of is experience gained as a litigation consultant and expert witness." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 716 F. Supp.2d 220, 225 (S.D.N.Y. 2010).

And Mr. Hansen's record of testifying in TCPA matters is far from sterling. Mr. Hansen's proffered expert testimony has been the subject of much criticism. Mr. Hansen has submitted reports or declarations that are remarkably similar in their flaws (and similar in general) to his report here, and his qualifications as a witness and methodology have been

---

[1] Notably, Mr. Hansen lists his contact email address as Jeff@TCPAwitness.com on his CV.

3

challenged numerous times. *See, e.g., Molnar v NCO Financial Systems*, Inc., No. 13-cv-00131 ECF No. 148 (S.D. Cal.); *Balschmiter v TD Auto Finance LLC*, No. 13-cv-01186 (E.D. Wis.); *Swaney v Regions Bank*, No. 13- cv-0544 (N.D. Ala.); *Marks v. Crunch San Diego*, No. 14-cv-00348 (S.D. Cal.).

For instance, evidence in the record of *Marks v. Crunch*, No. 14-cv-00348 (S.D. Cal.) showed that Mr. Hansen may have inflated the number of TCPA cases in which he served as an expert. Ex. C, Decl. and Supp. Rpt. of Margaret A. Daley, Charvat v. Valente, No. 12-cv-5746 (N.D. Ill. Aug. 31, 2016), ECF No. 521 Ex. 7 ("Daley Decl."), ¶ 44. That case involved text messages, and Mr. Hansen testified that he had worked on multiple text messaging cases. However, he refused to provide copies of his previous expert reports. The defendant challenged Mr. Hansen's credentials, and the court ordered Mr. Hansen to produce those reports. *Id*. In subsequent court filings, he "admitted that he had not actually provided an expert report in at least 24 of the 'TCPA Class Actions' listed on the Crunch CV." *Id*. In fact, Mr. Hansen had never submitted a report or declaration in a prior text messaging case. *Id*. The case was dismissed after the court granted defendant's summary judgment motion, which mooted the motion to exclude Hansen. *See Marks v. Crunch*, 55 F. Supp.3d 1288, 1293–94 (S.D. Cal. Oct. 23, 2014).

Other courts have excluded Mr. Hansen's testimony. *Strauss v. CBE Group, Inc.*, 2016 WL 2641965, at *2 (S.D. Fla. Mar. 23, 2016) (excluding portions of Mr. Hansen's report as improper legal conclusions); *Dominguez v. Yahoo!, Inc.*, 2017 WL 390267, at *19-20 (E.D. Pa. Jan. 27, 2017) (excluding Mr. Hansen's testimony because his "methodologies [were] not testable and not falsifiable, . . . not reliable, and [were] therefore not admissible"). Therefore,

this Court should give little weight to Mr. Hansen's previous testimony when evaluating his qualifications for this case.

> **B.    Mr. Hansen's Testimony Comprises only Testimony within the Knowledge of an Average Layperson or Legal Conclusions.**
>
> **1.    Mr. Hansen's testimony regarding the call detail records is not beyond the knowledge of an average layperson.**

Under Rule 702, expert testimony is only admissible if, "the subject matter at issue [is] beyond the common knowledge of an average layman." FED. R. CIV. P. 702. An expert's opinion that involves "nothing more than a series of simple calculations, which does not require expert skill[,]" is inadmissible. *Waine-Golston v. Time Warner Entertainment-Advance/New House Partnership*, 2013 WL 1285535, at *10 (S.D. Cal. Mar. 27, 2013).

Here, Mr. Hansen's describes his methodology as "simply copying" the call detail records and another spreadsheet containing wireless numbers into MySQL "and then executing a basic command telling the program to compare the two lists . . . ." Hansen Rpt. ¶ 50. In other words, Mr. Hansen's methodology is nothing more comparing entries on spreadsheets. That exercise is not "beyond the common knowledge of the average layperson." Mr. Hansen himself admits this, stating that his "comparison[s] could be performed manually (by looking at the [various] lists), but that would take an exceptionally long period of time given the lists." Hansen Rpt. ¶¶ 50-51. In Hansen's own words, anyone could do what Mr. Hansen has done. If Mr. Hansen possesses any expertise in this regard, his expertise is limited to comparing spreadsheet entries faster than someone doing it without a computer.

Courts have specifically found that a witness is not an expert where his or her purported expertise was merely utilizing an SQL database to sort and retrieve data. *See Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12-cv-97, 2016 WL 354751, at *3 (E.D. Va. Jan. 27, 2016) (using an SQL query to search for and retrieve data from a database is "no more

5

technical or foreign to the average layperson than typing a search request into Google and noting the number of results"). That is exactly what Mr. Hansen's testimony on this point is—a summarization of the data contained in the call detail records, an exercise that any layperson could perform. "A witness who does nothing more than review and summarize data in a computer database is a lay witness, not an expert." *Id*. In sum, Mr. Hansen's testimony on the call detail records is not "expert" testimony should therefore be excluded.

### 2. Mr. Hansen's testimony on the ATDS issue amounts to impermissible legal conclusions.

Courts in TCPA cases have rejected proffered "expert" seeking to establish that dialing equipment is an ATDS. *See, e.g., Legg v. Voice Media Group, Inc.*, 2014 WL 1767097 *4-5 (S.D. Fla. May 2, 2014) (excluding testimony of a proffered ATDS expert because "[i]mplicit within" the expert's testimony "that the systems . . . meet the legal definition of an automatic telephone dialing system" is the expert's "conclusion as to the legal definition of an automatic telephone dialing system"). Mr. Hansen's testimony as to whether Venture used an ATDS is likewise an impermissible legal conclusion.

This Court need not take POS's word for this proposition—at least one district court has held that Mr. Hansen's testimony amounts to an improper legal conclusion. The following table contains portions of Mr. Hansen's report in *Strauss v. CBE Group, Inc.*, 2016 WL 2641965, at *2 (S.D. Fla. Mar. 23, 2016). The left column contains language excluded by the court as "improper legal conclusions." *Id*. The right column contains what is essentially the same cookie-cutter language from Hansen's report in this case.

| Excluded in *Strauss v. CBE Group, Inc.* | Mr. Hansen's Current Report |
|---|---|
| "[I]n my expert opinion, [the Noble Systems Predictive Dialer] satisfies the requirements of an 'automatic telephone dialing system' | 24. "[I]n my expert opinion, the below [Pro-T-S and CFMC dialers] that are discussed in detail have the characteristics of an 'automatic |

6

| | |
|---|---|
| ("ATDS") as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA")." | telephone dialing system' ("ATDS") as defined by the TCPA." |
| "I am of the opinion that Defendant used an Automatic Telephone Dialing System to place telephone calls to Plaintiff, or more specifically, that the characteristics of the telephone dialing system described above meet the definition of equipment that has the capacity to store or produce numbers to be called, using a random or sequential number generator, and the capacity to call such numbers." | 27. "I am of the opinion that Ventura Data used the above predictive dialers to place calls to Plaintiff and the putative class, and that the dialers have the capacity to store or produce numbers to be called, using a random or sequential number generator, and the capacity to call such numbers." |
| "[I]n my expert opinion, the dialing system (as outlined above) constitute an ATDS as contemplated by the TCPA and clarified by the FCC[.]" | 28. "[I]n my expert opinion, the dialing systems (as outlined above) have the characteristics of an ATDS as contemplated by the TCPA and clarified by the FCC[.]" |
| "[I]t is also my expert opinion that all of the calls, at issue, made to Plaintiff in this case were made using an automatic telephone dialing system." | 40. "[I]t is also my expert opinion that the calls placed by Ventura Data to Plaintiff and the putative class using the dialers described in detail above were made using predictive dialers that have the characteristics of an automatic telephone dialing system as defined y the TCPA and FCC." |

This Court should likewise exclude Mr. Hansen's testimony as to whether Venture used an ATDS as an impermissible legal conclusion.

### C.    Mr. Hansen's Methods Are Unreliable and Rest on an Inadequate Factual Foundation

As an initial matter, Hansen's background, report, and deposition have multiple indicia of a "plug-and-play expert," who expends little energy on a case and who has limited knowledge of the substance of the cases he is involved in.  Mr. Hansen testified that, in 2016, he prepared approximately 75 or 80 reports, and, since the start of 2017, he has prepared 20 reports.  Hansen Dep. 12:21-13:6.  He also testified that he spent 53.5 hours preparing his report for this matter. *See* Ex. D, Hansen Timesheet.  Assuming he spends relatively the same amount of time on each

7

of his cases, he would have spent approximately 4012.5 hours last year working on 75 cases, all while maintaining a full-time job with HP. *See* Hansen Resume at 2. By this logic, he also would have already spent 1070 hours on his 20 cases thus far in 2017.[2] These hours far exceed those of someone working just a single full-time job, let alone a full-time job plus these hours "preparing" reports, thus calling into the question the actual amount of time he spends on his 75+ yearly cases. This alone should give this Court pause when considering the reliability of his testimony.

### 1. Mr. Hansen's ATDS Testimony

Mr. Hansen's *ipsa dixit* method of adducing whether an ATDS was used by Venture is not reliable and should therefore be excluded. Daubert sets forth a non-exhaustive list of factors the court may consider in assessing the reliability of expert testimony:

> (1) whether a theory or technique has been or can be tested;
> (2) "whether the theory or technique has been subjected to peer review and publication;"
> (3) the technique's "known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation;" and
> (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593–94 (1993). Mr. Hansen's testimony satisfies none of these factors. Mr. Hansen's method for determining whether the dialing systems at issue in this case constitute an ATDS consists of simply reviewing documents in conjunction with his alleged "experience with predictive dialers and autodialers" and declaring *ipse dixit* that the dialing system is an ATDS. *See* Hansen Rpt. ¶ 27. Mr. Hansen did not inspect

---

[2] Subtracting the 2.5 hours spent converting the data and the .5 hour responding to POS' subpoena, he still spent 50.5 hours reviewing the prior deposition testimony, analyzing the call records, and drafting the report. *See* Hansen Timesheet. Assuming he spent about the same amount of time with his 75+ reports last year and 20 reports thus far in 2017, he still would have then spent 3787.5 hours in 2016 and 1010 hours in 2017 preparing reports, all while holding a full time job with HP. *See* Hansen Resume at 2. Even assuming this report took more time than some of his others, the number of reports and somewhat lower hours estimates still call into question the accuracy of his hourly estimates.

any of the hardware or software used by Venture. Hansen Dep. 23:7-9. Although he alleges that he has "analyzed" the dialing systems at issue in other matters, Hansen Rpt. ¶¶ 14-15, he does not testify that he as ever actually used either of the dialing systems at issue. He does not testify that he considered the actual manner in which Venture made use of the hardware or software at issue. In fact, Mr. Hansen's "method" of determining whether an ATDS was used could more accurately be summarized as: (1) Ms. Mey's counsel informed of the dialing system(s) used by Venture; and (2) Mr. Mey's counsel paid Mr. Hansen $300 per hour to fill in the blanks of his cookie-cutter report template concluding that the system(s) constitute an ATDS. This "method" falls squarely outside what *Daubert* requires of reliable expert testimony. It should therefore be excluded.

### 2. Mr. Hansen's Testimony Concerning the Call Detail Records

Mr. Hansen's report purports to determine (1) which of the phone numbers that were allegedly called by Venture as part of a POS campaign were assigned to cell phones at the time they were called; and (2) which of them had been "ported" from a landline to which they were previously assigned to a wireless use. For both of these tasks, Mr. Hansen merely compared lists of numbers provided to him by Ms. Mey's counsel with certain databases that contain wireless numbers and numbers that have been ported.

At his deposition, Mr. Hansen displayed little to no knowledge of the actual call detail records he claims to have analyzed. He had trouble explaining the columns of an excerpt of a call detail record. *See* Ex. E, Hansen Dep. 27:17-25, 28:1-7. He could not verify the accuracy of the records—"if you were to ask me about the completeness of the data, well, quite frankly, I got to take the defendant at their word that they produced the whole thing." *Id.* at 35:19-22; *see also id.* at 34:16-17. He did not visit Venture Data to attempt to "verify the completeness of the data." *Id.* at 23:7-9 , 35:10-19. Instead, he based his opinions solely on deposition testimony

9

and documentation of the dialers, and his own "familiar[ity]." *Id*. 23:11-13. He also was unaware of the call recordings Plaintiff has erroneously relied upon to establish the use of an ATDS. *See id.* 19:2-7; Ex. F, Mey Dep. at 30-45 (transcript of call recordings). In fact, Mr. Hansen was not aware of most of the details on which he purports to testify. There are striking indicia of the unreliability of Mr. Hansen's report and testimony, and they should therefore be excluded.

## CONCLUSION

Mr. Hansen's testimony in this case meets none of the requirements necessary of an expert witness in federal court. POS respectfully requests that this Court exclude it.

Dated: April 7, 2017                                             Respectfully submitted,

By:   */s/* Christina S. Terek     
Christina S. Terek (WV Bar No. 9724)
**SPILMAN THOMAS & BATTLE, PLLC**
1233 Main Street, Suite 4000
P.O. Box 831
Wheeling, WV 26003
T:  304.230.6950
F:  304.230.6951
cterek@spilmanlaw.com

Michael B. Hazzard *(pro hac vice)*
Sarah C. Pomeroy *(pro hac vice)*
Dylan L. Jacobs *(pro hac vice)*
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-5439
mhazzard@jonesday.com

*Counsel for Public Opinion Strategies, LLC*

11

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| DIANA MEY, individually and on behalf of a class of all persons and entities similarly situated, | |
| *Plaintiff*, | CASE NO. 5:14-CV-123 JPB |
| v. | |
| VENTURE DATA, LLC, and PUBLIC OPINION STRATEGIES, LLC, | |
| *Defendants.* | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2017, I served a true and correct copy of "DEFENDANT PUBLIC OPINION STRATEGIES, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFF'S EXPERT REPORT AND TESTIMONY" via the Court's ECF system, which sent electronic notice to all counsel of record.

Ryan Donovan, Esquire
John W. Barrett, Esquire
Jonathan R. Marshall, Esquire
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
rdonovan@baileyglasser.com
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Matthew P. McCue, Esquire
Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
mmccue@massattorneys.net

Anthony Paronich, Esquire
Edward A. Broderick, Esquire
Broderick Law, P.C.
99 High Street, Suite 304
Boston, MA 02110
anthony@broderick-law.com
ted@broderick-law.com

Jeffrey A. Holmstrand, Esquire
Grove, Holmstrand & Delk
44 ½ Fifteenth Street
Wheeling, WV 26003
jholmstrand@grovedelklaw.com

Dated: April 7, 2017                             Respectfully submitted,

                                             */s/* Christina S. Terek
                                           Christina S. Terek (WV Bar No. 9724)