IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly
situated,

       Plaintiff,

v.                                                           Civil Action No. 5:14-CV-123-JPB
                                                         Judge Bailey

VENTURE DATA, LLC, and
PUBLIC OPINION STRATEGIES, LLC,

       Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO PUBLIC OPINION STRATEGIES'
MOTION TO EXCLUDE PLAINITFF'S EXPERT REPORT AND TESTIMONY**

**TABLE OF CONTENTS**

Background ................................................................................................................................. 1

Argument .................................................................................................................................... 2

   A.   Expert testimony is admissible if the proposed expert is qualified and his testimony will help the jury better understand the case. ............................................................................ 2

   B.   With more than 25 years as an IT specialist, including more than a decade running his own call center, Mr. Hansen is more than qualified to render the opinions in his report…3

   C.   Mr. Hansen's testimony will help the jury understand critical factual issues at trial. .......... 5

      1.   Mr. Hansen's analysis of more than one hundred million call records goes beyond the knowledge of the average lay juror. ........................................................................ 5

      2.   Mr. Hansen's evaluation of Venture Data's calling systems does not amount to impermissible legal conclusions. ............................................................................. 6

   D.   Mr. Hansen's methodology is reliable. ............................................................................. 7

Conclusion .................................................................................................................................. 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Booth v. Appstack, Inc.*,
  No. 13–1533, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ...............................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...........................................................................................................2, 9

*Dominguez v. Yahoo!, Inc.*,
  No. 13-1887, 2017 WL 390267 ...............................................................................................4

*Gaines v. Law Office of Patenaude & Felix, A.P.C.*,
  No. 13-1556, 2014 WL 3894345 (S.D. Cal. July 2, 2014) .......................................................3

*Krakauer v. Dish Network, LLC*,
  2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ..........................................................................6

*Landis v. Jarden Corp.*,
  No. 11-101, 2014 WL 186632 (N.D.W. Va. Jan. 15, 2014) (Bailey, J.) ...............................1, 6

*Mey v. Venture Data, LLC*,
  --- F. Supp. 3d ---, 2017 WL 1193072 (N.D.W. Va. 2017) ..............................................1, 6, 7

*Strauss v. CBE Grp., Inc.*,
  No. 15-62026, 2016 WL 2641965 (S.D. Fla. Mar. 23, 2016) ........................................4, 6, 7, 8

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999) ....................................................................................................2

**Other Authorities**

Federal Rule of Evidence 702 ..............................................................................................2, 3, 4, 6

In denying the POS motion for summary judgment, this Court acknowledged the experience and qualifications of Plaintiff's expert, Jeffrey Hansen, and concluded that a reasonable jury could rely on his testimony. *Mey v. Venture Data, LLC*, --- F. Supp. 3d ---, 2017 WL 1193072, at *15 (N.D.W. Va. 2017). Nonetheless, POS now moves to exclude Mr. Hansen's report and testimony, asserting the inconsistent arguments that, on the one hand, he is unqualified, and on the other hand, his testimony is within the knowledge of an average layperson. Neither is correct. As numerous federal courts have concluded, Mr. Hansen is well-qualified in his field and, though he may be adept at explaining complex analyses and massive amounts of data, there is nothing about his work that would be "obvious" to the untrained layman. *See Landis v. Jarden Corp.*, No. 11-101, 2014 WL 186632, at *3 (N.D.W. Va. Jan. 15, 2014) (Bailey, J.). Accordingly, the POS motion to exclude should be denied.

## Background

Plaintiff Diana Mey is a consumer advocate who lives in Wheeling, West Virginia. POS is a Washington, D.C. market research firm that provides services to political candidates and interest groups. Venture Data is POS's Utah-based call center.

The POS motion for summary judgment was denied in a forty-page, published opinion, and Ms. Mey's motion for class certification has been fully briefed, so the Court is well-acquainted with the underlying facts of the litigation. In short, Ms. Mey alleges that POS is vicariously liable under the TCPA for hundreds of thousands of illegal auto-dialed calls placed by co-defendant Venture Data on POS's behalf.

Ms. Mey's expert, Jeffrey Hansen, has provided opinions in hundreds of TCPA cases. He is the principal of Hansen Legal Technologies, Inc., a firm that specializes in computer forensic

1

analysis. (Exh. A, ¶¶ 4-5). His three-decade career as an IT professional includes substantial work for the United States military and federal government, for which he was entrusted with a "secret" security clearance. (Exh. B, at *5). He also spent 16 years personally operating a 672-line outbound calling center, where he gained hands-on experience with a range of autodialers and predictive dialers, and personally managed and analyzed calling lists used to make hundreds of millions of calls over a five-year period. (Exh. B, at *2). A full rundown of Mr. Hansen's relevant experience is attached as Exhibit B, which was previously disclosed with his expert report.

In this case, Mr. Hansen has served two basic functions. First, he was asked to analyze records of more than 114 million calls placed by Venture Data to determine which calls were made to cellular numbers on the dates in the proposed class definition. Second, he was asked to evaluate whether the dialing systems employed by Venture Data had the characteristics of an "automatic telephone dialing system," as defined by the TCPA.

## Argument

### A. Expert testimony is admissible if the proposed expert is qualified and his testimony will help the jury better understand the case.

The admissibility of expert opinion testimony is governed by Federal Rule of Evidence 702. In the Fourth Circuit, the leading case applying Rule 702 is *Westberry v. Gislaved Gummi AB*, which holds that "[e]xpert testimony is admissible under Rule 702 . . . if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." 178 F.3d 257 (4th Cir. 1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). The district court's inquiry is "a flexible one," focusing on the "principles and methodology" employed by the expert, not on the

conclusions reached, and guided by the principle that Rule 702 was "intended to liberalize the introduction of relevant expert evidence." *Id.*

**B. With more than 25 years as an IT specialist, including more than a decade running his own call center, Mr. Hansen is more than qualified to render the opinions in his report.**

The POS motion relies on a one-sentence "summary" of Mr. Hansen's experience, to the exclusion of the remainder of his five-page resume, and misleadingly claims that Hansen's "chief" qualification is that he has served as an expert before.

In fact, Mr. Hansen's "chief" qualification is his nearly thirty years as an IT specialist, including more than 15 years operating a call center of his own. Indeed, it is difficult to imagine a qualification more relevant than the fact that Mr. Hansen operated his own call center during the same time period as the calls made to the members of the class. This experience not only left Mr. Hansen well-acquainted with the outbound-dialing industry as a whole, but provided him a particular familiarity with the manner in which outbound dialing records are used and maintained. (Exh. A, ¶¶ 6, 9). Further, Mr. Hansen has prior, first-hand experience with each of the dialing systems used by Venture Data in this case. (Exh. A, ¶ 14-16; *see also id.* ¶ 7 "I have assembled, configured, maintained, operated all aspects of autodialers, and interfaced with the telecommunications providers through whose networks the autodialers operate.").

Mr. Hansen's expertise regarding dialing system and call record analysis has been repeatedly acknowledged in other TCPA cases. *See e.g.*, *Booth v. Appstack, Inc.*, No. 13–1533, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) (granting Plaintiff's motion for class certification after Mr. Hansen identified cellular telephone numbers called with an automated dialing system); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13-1556, 2014 WL 3894345, at *1 (S.D. Cal. July 2, 2014) (granting Plaintiff's motion to compel on basis of Mr.

3

Hansen's expert opinions). And the POS claim that two courts have excluded Mr. Hansen's opinions is overstated. Overall, the cases POS cites actually *support* admission of Mr. Hansen's testimony. First, in *Strauss v. CBE Grp., Inc*, the court excluded just four sentences from Mr. Hansen's report as improper legal conclusions (none of which appear in this report), but otherwise endorsed his work, holding that "the remainder of [Mr. Hansen's report is] sufficiently reliable and otherwise admissible as expert opinion." No. 15-62026, 2016 WL 2641965, at *2 (S.D. Fla. Mar. 23, 2016). Second, in *Dominguez v. Yahoo!, Inc*., the court excluded an unrelated, text-message-based methodology that Mr. Hansen does not employ here, but unequivocally found that Mr. Hansen was qualified to testify. No. 13-1887, 2017 WL 390267, at *19 (E.D. Pa. Jan. 27, 2017) ("[A]lthough Yahoo takes issue with the qualifications of all four experts, the Court holds that under the standard articulated by the Third Circuit for expert qualification, all four experts are qualified.").[1]

Finally, the POS attack on Mr. Hansen because he did not graduate from college is particularly unavailing. Rule 702 does not require a doctorate from Harvard. Following graduation from high school, Mr. Hansen chose to serve his county in the United States Navy, where he attained extensive IT training. (Exh. B, at *3-4). Since then, he has buttressed his practical experience by attending vocational schools and acquiring relevant and respected certifications. (*Id.* at *4-5). Indeed, in another TCPA case where a defendant challenged Hansen's qualifications for lack of a college education, the court held that the attack on Hansen was "gratuitously derogatory; geniuses of all kinds have boasted no college degree." (Exh. C, at *10 n.14).

---

[1] POS also cites three cases where Mr. Hansen's opinion was "challenged." However, the mere fact that a motion to exclude testimony was filed does not mean that it was well-founded or should be persuasive to this Court.

Accordingly, Mr. Hansen is well-qualified to testify in this case.

### C. Mr. Hansen's testimony will help the jury understand critical factual issues at trial.
#### 1. Mr. Hansen's analysis of more than one hundred million call records goes beyond the knowledge of the average lay juror.

POS next asserts that Mr. Hansen's analysis of call detail records and identification of cellular telephone numbers at the time that they were called is something that "anyone can do." That is simply not true. Here, Mr. Hansen took a database that contained over 114,000,000 calling records and isolated (a) the calls that were made only for POS on particular dates and (b) those calls that were made to cellular telephone numbers at the time they were called. This process took over fifty hours and was done with the aid of nearly two decades of experience analyzing similar calling data while working with telephone call centers.

It was no easy matter to perform this work. First, Mr. Hansen took the voluminous call records from their fixed width format and converted them to a spreadsheet format in which to be analyzed. (Exh. A ¶ 49). Next, Mr. Hansen placed the calling records into a database and, using a computer code he developed himself,[2] compared them with a list he knows to be reliable for identifying cellular telephones. (*Id.* ¶ 50). As a result of his experience with telephone call centers, however, Mr. Hansen was aware that this step would not have captured all the possible cellular telephone numbers that were called, so he retrieved another list regularly used in the industry and created four more codes designed to capture all of the cellular telephones in the calling records. (*Id.* ¶ 51). Following this task, Mr. Hansen identified and isolated calling activity that was done by Venture Data for POS, and the calling that was done by Venture Data for POS on the same days Ms. Mey was called. (*Id.* ¶ 52). Finally, Mr. Hansen isolated the calling that

---

[2] *See* Exh. A, ¶¶ 50-51 n.2 & n.3.

5

was done by the other clients of Venture Data so they would not be included in the jury's consideration of the calling activities for POS. (*Id*).

"[T]o decide whether expert testimony is appropriate on a particular subject, this Court need only conduct 'the common sense inquiry whether the untrained layman would be qualified to determine intelligently . . . the particular issue without enlightenment from those having a specialized understanding of the subject involved.'" *Landis v. Jarden Corp.*, No. 11-101, 2014 WL 186632, at *3 (N.D.W. Va. Jan. 15, 2014) (quoting Fed. R. Evid. 702, advisory committee's note (1972)) (Bailey, J.). Though POS mischaracterizes Mr. Hanson's work as merely "comparing spreadsheets," it is a matter of common sense that the average lay juror is ill-equipped to make sense of the voluminous records in this case.[3]

### 2. Mr. Hansen's evaluation of Venture Data's calling systems does not amount to impermissible legal conclusions.

The Court has already concluded that a reasonable jury could rely on Mr. Hansen's testimony concerning Venture Data's dialing systems. *See Mey*, --- F. Supp. 3d ---, 2017 WL 1193072, at *15. Nonetheless, POS erroneously contends that Mr. Hansen's testimony on this subject is an impermissible legal conclusion. This argument is based on the premise that Mr. Hansen's testimony is similar to four sentences that were excluded from his report in *Strauss*, discussed above. This argument misses the mark on two fronts.

First, Mr. Hansen's testimony here is materially different than the four sentences that were stricken in *Strauss*. In this report, Mr. Hansen does not conclusively state that the dialing

---

[3] If, in fact, POS is correct that the interpretation of the defendants' call records is "not beyond the common knowledge of the average lay person," then Mr. Hansen's report is not "critical to class certification," and thus this motion should be denied as premature. *See* POS Brief at 1, ECF. No. 191 (citing *Krakauer v. Dish Network, LLC*, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015).

6

systems *are* ATDS as he did in *Strauss*. Instead, after analyzing more than twenty documents and relying on his experience with these dialing systems himself, Mr. Hansen summarizes his opinion by explaining that the dialing systems used "have the *characteristics of an ATDS*, as contemplated by the TCPA and clarified by the FCC." (Exh. A ¶ 28) (emphasis added). Mr. Hansen's experience and expertise allowed him to evaluate the documents and rely on his own experience to explain the way that the dialing technology worked and to explain the characteristics of those systems. Once he explains the characteristics of those systems to a jury, a determination about the dialing system as an ATDS (or not) can be made.

Second, POS appears to be moving to strike Mr. Hansen's entire opinion regarding his ATDS analysis, which is over thirty paragraphs and based on more than 20 exhibits. Even if the particular paragraphs POS challenges are legal conclusions, there is no basis for striking the entirety of Mr. Hansen's report or excluding him completely as a witness at trial.[4]

### D. Mr. Hansen's methodology is reliable.

The POS argument that Mr. Hansen's methods are unreliable begins by speculating that Mr. Hansen could not produce as many expert reports as he claims while spending as much time on each as he did on this case. Actually, that is true. However, what POS failed ask Mr. Hansen at his deposition, and what is explained in the accompanying declaration, is that his analysis in this case took substantially more time than usual because of the abnormally large amount of data at issue. (Exh. E, ¶ 5). Furthermore, many of the reports prepared by Mr. Hansen in other cases relate solely to the capacities of dialing systems, and are for individual cases, as opposed to class

---

[4] Notably, in denying the POS motion for summary judgment, the Court held that Venture Data's party admissions "alone [were] sufficient to preclude summary judgment on the ATDS issue." *Mey,* -- F. Supp. 3d --, 2017 WL 1193072, at *15. Thus, Mr. Hansen's testimony is not critical at this stage, and the POS motion to exclude is at best premature.

7

actions. (*Id*. ¶ 4). Accordingly, POS's extrapolated calculations, which it uses to suggest that Mr. Hansen has misled the Court, are based on faulty assumptions and should be disregarded.

POS's first substantive attack on the reliability of Mr. Hansen's analysis is that he did not perform a "physical inspection" of the dialing system used. As an initial matter, the functionalities of a computer-based dialing system are not based on their physical attributes, and other courts faced with the same argument have summarily rejected the position offered by POS. *See e.g.*, *Strauss*, 2016 WL 2641965, at *3 ("Although Hansen did not visually inspect the equipment in preparing the Report, he reviewed, among other things, CBE's patent application for the MCA [and] Plaintiff's account notes. . . . In light of Hansen's familiarity with CBE's dialing systems and review of evidence particular to this case, the Court finds sufficiently reliable Hansen's expert opinion on the technologies CBE used to place the calls at issue."). Similarly, in this case Mr. Hansen had prior experience with each dialer, reviewed voluminous documentary evidence, and even spoke with an engineer of one of the dialing systems used to form the basis of his opinions. (Exh. A, ¶ 16). As a result, no physical inspection of the computer-based dialing systems was necessary to render his opinion.

Relatedly, POS claims that Mr. Hansen failed to visit co-defendant Venture Data to verify the completeness of the 114,000,000 calling records produced. However, these records were produced by Venture Data in response to a court order, and at no time has Venture Data claimed that the documents were incomplete or inaccurate. As such, there has been no reason for Mr. Hansen to confer with the defendant regarding the completeness of calling records that it was compelled to produce.

Lastly, POS also attacks Mr. Hansen on the basis that that he was unable to answer some questions about an excerpt of the call records prepared by defense counsel during the deposition.

But as Mr. Hansen made clear during his deposition, it is difficult, if not impossible, to recreate his complex, computer-based analysis on a paper printout: "I would look through all 114 million records, performing queries across those, such as selecting all of the unique entries in a particular column to be able to ascertain it. So, it's very difficult to do such a thing on a small sample printed out on a sheet of paper." (Exh. D, at 27:1-7).[5]

At bottom, the POS attacks on the reliability of Mr. Hansen's methods are but disguised attacks on the validity of his opinions, which though meritless, may be addressed through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. They do not warrant exclusion.

## Conclusion

For the foregoing reasons, the POS motion to exclude Mr. Hansen's report and testimony should be denied.

                                                     **Respectfully submitted,**
                                                     DIANA MEY,
                                                     by Counsel

---

[5] It is obvious from the deposition transcript that the printouts themselves were difficult to decipher. (*See e.g.*, Exh. D at 27) ("[I]t's so small I don't think I could actually count to see if those are ten digits, but, yes, those appear to be the phone number.").

/s/ Ryan McCune Donovan
John W. Barrett
Jonathan R. Marshall
Ryan McCune Donovan
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
rdonovan@baileyglasser.com

Edward A. Broderick
Anthony Paronich
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

## CERTIFICATE OF SERVICE

      I hereby certify that on April 21, 2017, I caused to be filed the foregoing "PLAINTIFF'S RESPONSE IN OPPOSITION TO PUBLIC OPINION STRATEGIES' MOTION TO EXCLUDE PLAINITFF'S EXPERT REPORT AND TESTIMONY" with the Clerk of the Court using the CM/ECF System, which caused a true and accurate copy of such filing to be served upon all attorneys of record.

                                            /s/ Ryan McCune Donovan
                                            Ryan McCune Donovan