**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**DIANA MEY,** individually and on
behalf of a class of persons and
entities similarly situated,

                  Plaintiff,

    **v.**                        **CIVIL ACTION NO. 5:14-CV-123
(BAILEY)**

**VENTURE DATA, LLC and
PUBLIC OPINION STRATEGIES**,

                  Defendants.

## ORDER CERTIFYING A CLASS AND RULING UPON MOTIONS

Pending before this Court are Plaintiff's Motion for Class Certification [Doc. 135], Defendant Public Opinion Strategies, LLC's Motion to Exclude Plaintiff's Expert Report and Testimony [Doc. 190], Defendant Public Opinion Strategies, LLC's Motion for Leave to File Surreply [Doc. 197] and Defendant Public Opinion Strategies, LLC's Motion to Exclude Plaintiff's New and Untimely Expert Declaration [Doc. 198].  All Motions have been fully briefed and are ripe for decision.  For the reasons stated below, this Court will grant the motion for class certification, deny the motion to exclude the plaintiff's expert report, grant the motion to file a surreply, and deny as moot the motion to exclude the new and untimely expert declaration.

This civil action was originally filed in this Court on September 9, 2014, asserting a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, against defendant Venture Data, LLC only [Doc. 1].  On January 7, 2016, the plaintiff sought and ultimately

received leave to file an amended complaint adding Public Opinion Strategies ("POS") as a defendant [Docs. 49, 50 & 51].  On February 25, 2016, defendant POS filed its motion to dismiss [Doc. 59].  Briefing on the Motion was completed on March 21, 2016 [Doc. 69]. On April 4, 2016, the  parties stipulated to a stay pending a decision by the United States Supreme Court in *Spokeo, Inc. v. Robins*, No. 13-1339 [Doc. 72].

On May 16, 2016, the Supreme Court issued its decision, *Spokeo, Inc. v. Thomas Robins*, 578 U.S. __ (2016).  On May 19, 2016, this Court ordered additional briefing on the effect of *Spokeo* [Doc. 76], and by Order entered June 30, 2016, denied a separate motion to dismiss on standing grounds [Doc. 83].

In Defendant Public Opinion Strategies, LLC's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 59], POS sought dismissal of the vicarious liability claim [Doc. 60].  That Motion was denied on July 26, 2016 [Doc. 85].

"The TCPA was enacted in response to '[v]oluminous consumer complaints about abuses of telephone technology.' *Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740, 744 (2012).  In *Mims*, the Supreme Court summarized Congress' findings on the matter:

In enacting the TCPA, Congress made several findings .... 'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion of privacy.'   TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). In particular, Congress reported, '[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes.'   *Ibid.* (internal quotation marks omitted).  '[A]utomated or prerecorded telephone calls' made

to private residences, Congress found, were rightly regarded by recipients as

'an invasion of privacy.'  *Ibid.* (internal quotation marks omitted).

*Id.* at 745.

"The unanimous decision in *Mims* also isolated four practices that the TCPA was designed to halt:

> [T]he TCPA principally outlaws four practices.  First, the Act makes it unlawful to use an automatic telephone dialing system [('autodialer')] or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any ... cellular telephone, or other service for which the receiver is charged for the call.  *See* 47 U.S.C. § 227(b)(1)(A).  Second, the TCPA forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent. § 227(b)(1)(B). Third, the Act proscribes sending unsolicited advertisements to fax machines. § 227(b)(1)(C).  Fourth, it bans using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously.  § 227(b)(1)(D).

*Id*. at 745."  *Mey v. Honeywell Intern., Inc.*, 2013 WL 1337295, *1 (S.D. W.Va. March 29, 2013) (Copenhaver, J.).

"The TCPA is a remedial statute and thus entitled to a broad construction. *See, e.g., Holmes v. Back Doctors, Ltd.,* 695 F.Supp.2d 843, 854 (S.D. Ill. 2010) ('It is true that ... the TCPA is a remedial statute.').  As such, it 'should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions

3

by wrongdoers.' *Scarborough v. Atlantic Coast Line R. Co.,* 178 F.2d 253, 258 (4th Cir. 1950).  At the same time, a remedial purpose 'will not justify reading a provision "more broadly than its language and the statutory scheme reasonably permit."' *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578 (1979) (quoting *SEC v. Sloan,* 436 U.S. 103, 116 (1978))." *Id.  See also In re Monitronics Intern., Inc., Tel. Consumer Protection Act Litigation*, 2015 WL 1964951, *3 (N.D. W.Va. April 30, 2015) (Keeley, J.) (same).

## I.   Defendant Public Opinion Strategies, LLC's Motion to Exclude Plaintiff's Expert Report and Testimony

In order to properly analyze the pending motions, this Court finds it necessary to first address the Defendant Public Opinion Strategies, LLC's Motion to Exclude Plaintiff's Expert Report and Testimony [Doc. 190].  In that Motion, POS seeks to exclude the report and testimony of plaintiff's expert, Jeffrey Hansen, on the basis that (1) he is not qualified to present expert testimony, (2) the opinions he intends to present are within the knowledge of the average layperson, (3) his opinions are legal conclusions, and (4) his methods are unreliable.

The admissibility of expert opinion testimony is governed by Federal Rule of Evidence 702.  In the Fourth Circuit, the leading case applying Rule 702 is *Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999), which holds that "[e]xpert testimony is admissible under Rule 702 . . . if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." 178 F.3d at 260 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)).  The district court's inquiry is "a flexible one," focusing on the "principles and methodology" employed by the expert, not on the conclusions reached, and guided by the

principle that Rule 702 was "intended to liberalize the introduction of relevant expert evidence." *Id*.

Mr. Hansen's "chief" qualification is his nearly thirty years as an IT specialist, including more than 15 years operating a call center.  It is difficult to imagine a qualification more relevant than the fact that Mr. Hansen operated his own call center during the same time period as the calls made to the members of the class.  This experience not only left Mr. Hansen well-acquainted with the outbound-dialing industry as a whole, but provided him a particular familiarity with the manner in which outbound dialing records are used and maintained.  Further, Mr. Hansen has prior, first-hand experience with each of the dialing systems used by Venture Data in this case. [Doc. 196-1, pp. 7 & 9] ("I have assembled, configured, maintained, operated all aspects of autodialers, and interfaced with the telecommunications providers through whose networks the autodialers operate.").

Mr. Hansen's expertise regarding dialing system and call record analysis has been repeatedly acknowledged in other TCPA cases.  See e.g., ***Booth v. Appstack, Inc.***, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) (granting plaintiff's motion for class certification after Mr. Hansen identified cellular telephone numbers called with an automated dialing system);  ***Gaines v. Law Office of Patenaude & Felix, A.P.C.***, 2014 WL 3894345, at *1 (S.D. Cal. July 2, 2014) (granting Plaintiff's motion to compel on basis of Mr. Hansen's expert opinions).  The POS claim that two courts have excluded Mr. Hansen's opinions is overstated.  Overall, the cases POS cites actually support admission of Mr. Hansen's testimony.  First, in ***Strauss v. CBE Grp., Inc***, the court excluded just four sentences from Mr. Hansen's report as improper legal conclusions (none of which appear in this report),

but otherwise endorsed his work, holding that "the remainder of [Mr. Hansen's report is] sufficiently reliable and otherwise admissible as expert opinion." 2016 WL 2641965, at *2 (S.D. Fla. Mar. 23, 2016). Second, in **Dominguez v. Yahoo!, Inc.**, the court excluded an unrelated, text-message-based methodology that Mr. Hansen does not employ here, but unequivocally found that Mr. Hansen was qualified to testify. 2017 WL 390267, at *19 (E.D. Pa. Jan. 27, 2017) ("[A]lthough Yahoo takes issue with the qualifications of all four experts, the Court holds that under the standard articulated by the Third Circuit for expert qualification, all four experts are qualified.").

Finally, the POS attack on Mr. Hansen because he did not graduate from college is particularly unavailing. Rule 702 does not require a doctorate from Harvard. Following graduation from high school, Mr. Hansen chose to serve his county in the United States Navy, where he attained extensive IT training. Since then, he has buttressed his practical experience by attending vocational schools and acquiring relevant and respected certifications. Indeed, in another TCPA case where a defendant challenged Hansen's qualifications for lack of a college education, the court held that the attack on Hansen was "gratuitously derogatory; geniuses of all kinds have boasted no college degree." **Sherman v. Yahoo! Inc.**, 13-CV-00041-GPC (WVG) (S.D. Cal. February 20, 2015).

POS next asserts that Mr. Hansen's analysis of call detail records and identification of cellular telephone numbers at the time that they were called is something that "anyone can do." That is simply not true. Mr. Hansen took a database that contained over 114,000,000 calling records and isolated (a) the calls that were made only for POS on particular dates and (b) those calls that were made to cellular telephone numbers at the

6

time they were called.  This process took over fifty hours and was done with the aid of nearly two decades of experience analyzing similar calling data while working with telephone call centers.

This Court cannot imagine providing the jury with hundreds of pages of telephone numbers and directing them to determine which numbers represented calls to cellular telephones.  Certainly the undersigned could not do it.

"[T]o decide whether expert testimony is appropriate on a particular subject, this Court need only conduct 'the common sense inquiry whether the untrained layman would be qualified to determine intelligently . . . the particular issue without enlightenment from those having a specialized understanding of the subject involved.'"  ***Landis v. Jarden Corp.***, 2014 WL 186632, at *3 (N.D. W.Va. Jan. 15, 2014) (quoting Fed. R. Evid. 702, advisory committee's note (1972)) (Bailey, J.).  Though POS mischaracterizes Mr. Hansen's work as merely "comparing spreadsheets," it is a matter of common sense that the average lay juror is ill equipped to make sense of the voluminous records in this case.

POS also contends that Mr. Hansen's testimony on the subject of Venture Data's dialing systems constitutes an impermissible legal conclusion.  This argument is based on the premise that Mr. Hansen's testimony is similar to four sentences that were excluded from his report in ***Strauss***, discussed above.  This argument is misplaced.  First, Mr. Hansen's testimony here is materially different than the four sentences that were stricken in ***Strauss***.  In his report in this case, Mr. Hansen does not conclusively state that the dialing systems are ATDS as he did in ***Strauss***.  Instead, after analyzing more than twenty documents and relying on his experience with these dialing systems himself, Mr. Hansen

summarizes his opinion by explaining that the dialing systems used "have the characteristics of an ATDS, as contemplated by the TCPA and clarified by the FCC." [Doc. 196-1, Exh. A ¶ 28].  Mr. Hansen's experience and expertise allowed him to evaluate the documents and rely on his own experience to explain the way that the dialing technology worked and to explain the characteristics of those systems.  Once he explains the characteristics of those systems to a jury, a determination about the dialing system as an ATDS (or not) can be made.  Second, POS appears to be moving to strike Mr. Hansen's entire opinion regarding his ATDS analysis, which is over thirty paragraphs and based on more than 20 exhibits.  Even if the particular paragraphs POS challenges are legal conclusions, there is no basis for striking the entirety of Mr. Hansen's report or excluding him completely as a witness at trial.

POS next attacks Mr. Hansen's methodology by attempting to argue that given the number of hours he spent on this case and multiplying those hours times the number of cases in which he has rendered opinions demonstrates that there are not enough hours for him to do the work.  This argument is speculative at best.  Without knowing how many hours were spent in other cases and without knowing whether the hours spent in this case are typical, this argument fails.

POS's first substantive attack on the reliability of Mr. Hansen's analysis is that he did not perform a "physical inspection" of the dialing system used.  The functionalities of a computer-based dialing system are not based on their physical attributes, and other courts faced with the same argument have summarily rejected the position offered by POS. See e.g., **Strauss**, 2016 WL 2641965, at *3 ("Although Hansen did not visually inspect the equipment in preparing the Report, he reviewed, among other things, CBE's patent

application for the MCA [and] Plaintiff's account notes. . ..  In light of Hansen's familiarity with CBE's dialing systems and review of evidence particular to this case, the Court finds sufficiently reliable Hansen's expert opinion on the technologies CBE used to place the calls at issue.").

Similarly, in this case Mr. Hansen had prior experience with each dialer, reviewed voluminous documentary evidence, and even spoke with an engineer of one of the dialing systems used to form the basis of his opinions. [Doc. 196-1, Exh. A, ¶ 16].  As a result, no physical inspection of the computer-based dialing systems was necessary to render his opinion.

Relatedly, POS claims that Mr. Hansen failed to visit co-defendant Venture Data to verify the completeness of the 114,000,000 calling records produced.  However, these records were produced by Venture Data in response to a court order, and at no time has Venture Data claimed that the documents were incomplete or inaccurate.  As such, there has been no reason for Mr. Hansen to confer with the defendant regarding the completeness of calling records that it was compelled to produce.

Some of the issues raised by POS are fodder for cross examination, but this Court finds no basis upon which Mr. Hansen and his opinions should be excluded.  The Motion will be denied.

## II.    Plaintiff's Motion for Class Certification

With regard to the issue of class certification, the plaintiff seeks certification of a class defined as follows:

> All persons in the United States to whom, on June 11, August 19, or September 9, 2014, Venture Data placed a call on his or her cellular telephone line, using the Pro-T-S or CFMC dialer, and as part of a Public

Opinion Strategies survey.

According to plaintiff, this case is ideally suited for class certification because it will allow resolution of distilled factual and legal issues through this superior mechanism. Courts have recognized that "[c]lass certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients." **Holtzman v. Turza**, 728 F.3d 682, 684 (7th Cir. 2013); *see also* **Bee, Denning, Inc. v. Capital Alliance Grp.**, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions."). This case is no different.

"A district court 'has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23.'" **Lienhart v. Dryvit Sys., Inc.**, 255 F.3d 138, 146 (4th Cir. 2001), quoting **In re American Med. Sys., Inc.,** 75 F.3d 1069, 1079 (6th Cir. 1996). "[P]laintiffs bear the burden . . . of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden . . .." **Thorn v. Jefferson-Pilot Ins. Co.**, 445 F.3d 311, 317 (4th Cir. 2006), quoting **Gariety v. Grant Thornton, LLP,** 368 F.3d 356, 370 (4th Cir. 2004).

In an action such as this, class certification may be granted only if the plaintiff satisfies the requirements of numerosity, commonality, typicality, representativeness, predominance, and superiority of Rule 23(a)[1] and (b)(3)[2] are met. **Lienhart**, 255 F.3d at

---

[1] Rule 23(a) provides:

**(a) Prerequisites**.  One or more members of a class may sue or be sued as representative

146.

"[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.' Fed.R.Civ.P. 23(a)(1). Commonality requires that 'there are questions of law or fact common to the class.' Fed.R.Civ.P. 23(a)(2). The common questions must be dispositive and over-shadow other issues." *Id*., citing *Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir. 1990). "In a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class "predominate over" other questions.'" *Id.*, at n.4, quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 609

---

parties on behalf of all members only if:
(1)  the class is so numerous that joinder of all members is impracticable;
(2)  there are questions of law or fact common to the class;
(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)  the representative parties will fairly and adequately protect the interests of the class.

[2] Rule 23(b)(3) provides:

**(b)  Types of Class Actions**.  A class action may be maintained if Rule 23(a) is satisfied and if:
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D)  the likely difficulties in managing a class action.

(1997).

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.' *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982) (internal quotation marks omitted). Representativeness requires that the class representatives 'will fairly and adequately protect the interests of the class.' Fed.R.Civ.P. 23(a)(4). . . . [T]he final three requirements of Rule 23(a) 'tend to merge, with commonality and typicality "serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."' *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 337 (4th Cir. 1998) (quoting *Falcon,* 457 U.S. at 157 n. 13)." *Id.* at 146-47.

"In contrast to actions under Rule 23(b)(1) and (b)(2), Rule 23(b)(3) actions are '[f]ramed for situations in which class-action treatment is not clearly called for,' but 'may nevertheless be convenient and desirable.' *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997) (internal quotation marks omitted).  In addition to the four Rule 23(a) requirements, Rule 23(b)(3) actions such as this one must meet two requirements: predominance and superiority.  Predominance requires that '[common] questions of law or fact ... predominate over any questions affecting only individual members.' Fed.R.Civ.P. 23(b)(3).  The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' *Amchem,* 521 U.S. at 623.

12

Superiority requires that a class action be 'superior to other methods for the fair and efficient adjudication of the controversy.' Fed.R.Civ.P. 23(b)(3)." *Id*. at 147.

The existence of an "ascertainable" class is an implied prerequisite of Rule 23. Importantly, however, it is not necessary that the plaintiff be able to identify every class member at the class certification stage. Rather, a proposed class is ascertainable if it can be "readily identif[ied] . . . in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 368 (4th Cir. 2014).

Ms. Mey's proposed class satisfies this requirement. The class is defined solely by reference to the following objective criteria: (1) whether Venture Data placed a call to an individual's cellular phone line on certain dates; (2) whether the call was placed using the Pro-TS or CFMC dialer; and (3) whether the calls were part of a POS survey. *See Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013) (finding the proposed class in a TCPA case ascertainable because "[w]hether a customer received an autodialed or artificial/prerecorded call may be determined objectively").

Turning to the Rule 23(a) requirements, "Rule 23(a)(1) requires that the class be of sufficient size that joinder of all members is 'impracticable.' In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648 (4th Cir. 1967). Factors to be considered are 'the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required.'

*Christman v. American Cyanamid Co.,* 92 F.R.D. 441, 451 (N.D. W.Va. 1981); *McGlothlin v. Connors,* 142 F.R.D. 626, 632 (W.D. Va. 1992)." *In re Serzone Prods. Liab. Litig.,* 231 F.R.D. 221, 237 (S.D. W.Va. 2005) (Goodwin, J.).

"Impracticable does not mean impossible." *Hewlett v. Premier Salons, Int'l, Inc.,* 185 F.R.D. 211, 215 (D. Md. 1997) (Chasanow, J.)(quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). "When a class is extremely large, the numbers alone may allow the court to presume impracticability of joinder. *Buford v. H & R Block, Inc.,* 168 F.R.D. 340, 348 (S.D. Ga. 1996) (citing *Finnan v. L.F. Rothschild & Co., Inc.,* 726 F.Supp. 460, 465 (S.D. N.Y. 1989); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986)). There is no bright line test for determining numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case. *Id.* (citing *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 371 (D. Del. 1990))." *Id.*

There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.,* 584 F.2d 34 (4th Cir. 1978)). However, where the class numbers twenty-five or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members sufficient).

Numerosity is a non-issue in this case. Mr. Hansen's report establishes that there are 121,440 class members. Because it would be impracticable to join so many individual cases, Rule 23(a)(1) is satisfied.

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact

common to the class."  Rule 23(b)(3) requires that questions of law or fact common to the class predominate over any questions affecting only individual members.  The Fourth Circuit has held that "[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class "predominate over" other questions.'"  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 n. 4 (4th Cir. 2001)(quoting *Amchem*, 521 U.S. at 609).  Because this is a class action brought under Rule 23(b)(3), this Court will analyze the two factors together in the predominance section of this opinion. *See In re LifeUSA Holding Inc.,* 242 F.3d 136, 144 (3d Cir. 2001) (analyzing the two factors together).

"To satisfy the typicality requirement under Rule 23(a)(3), the 'claims or defenses of the representative parties [must be] typical of the claims or defenses of the class.' *Fed.R.Civ.P.* 23(a)(3).  'A sufficient nexus is established [to show typicality] if the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory.'  *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 686 (S.D. Fla. 2004) (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)); *see also In re Diet Drugs,* 2000 WL 1222042 at *43 (E.D. Pa. Aug. 28, 2000).  The class representatives and class members need not have suffered identical injuries or damages.  *United Broth. of Carpenters v. Phoenix Assoc., Inc.,* 152 F.R.D. 518, 522 (S.D. W.Va. 1994);  *see also Mick v. Ravenswood Aluminum Corp.,* 178 F.R.D. 90, 92 (S.D. W.Va. 1998)."  *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W.Va. 2005) (Goodwin, J.).

"The typicality requirement has been observed to be a redundant criterion, and some courts have expressed doubt as to its utility. *Buford,* 168 F.R.D. at 350 (citing *Sanders v. Robinson Humphrey/American Express, Inc.,* 634 F.Supp. 1048, 1056 (N.D. Ga. 1986), *aff'd in part, rev'd in part on other grounds sub nom., Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988)).  Some courts treat typicality as overlapping with commonality, *see Zapata [v. IBP, Inc.*], 167 F.R.D. at 160; *cf. Falcon,* 457 U.S. at 157 n. 13 (noting that typicality and commonality 'tend to merge'); other courts equate typicality with adequacy of representation.  *Buford,* 168 F.R.D. at 350 (citing *Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 606 (N.D. Cal. 1991)). Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. *Zapata,* 167 F.R.D. at 160 (citing 1 *Newberg on Class Actions* § 3.13).  A plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.' *Id.* (quoting 1 *Newberg on Class Actions* § 3.13).  So long as the plaintiffs and the class have an interest in prevailing in similar legal claims, then the typicality requirement is satisfied.  *Buford,* 168 F.R.D. at 351 (citing *Meyer v. Citizens and Southern Nat'l Bank,* 106 F.R.D. 356, 361 (M.D. Ga. 1985)).  The existence of certain defenses available against plaintiffs that may not be available against other class members has been held not to preclude a finding of typicality. *See id.* (citing *International Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 102 F.R.D. 457, 463 (N.D. Cal. 1983)).  The

16

burden of showing typicality is not meant to be an onerous one, but it does require more than general conclusions and allegations that unnamed individuals have suffered discrimination. ***Kernan,*** 1990 WL 289505, at *3 (citing ***Paxton v. Union Nat'l Bank,*** 688 F.2d 552, 556 (8th Cir. 1982), *cert. denied,* 460 U.S. 1083 (1983))." ***Hewlett v. Premier Salons, Int'l, Inc.***, 185 F.R.D. 211, 216 (D. Md. 1997) (Chasanow, J.).

Ms. Mey's claim and the class claims follow the same factual and legal theory: that Venture Data used an autodialer to unlawfully call their cellular telephone lines, and that POS is vicariously responsible for Venture Data's actions.   Because there are no meaningful differences between Ms. Mey's claims and those of the class, the typicality requirement is satisfied.

"The final requirement of Rule 23(a) is set forth in subsection (4), which requires that 'the representative parties will fairly and adequately protect the interests of the class.' *Fed.R.Civ.P.* 23(a)(4).  This determination requires a two-pronged inquiry: (1) the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation. ***Hewlett v. Premier Salons Int'l, Inc.,*** 185 F.R.D. 211, 218 (D. Md. 1997)." ***Serzone***, 231 F.R.D. at 238.

The defendants do not contest plaintiffs' counsel's ability to conduct the litigation, nor does this Court.  The defendants have not pointed out any interests that the named plaintiffs have that are antagonistic to the interests of the proposed class.

The Court finds no conflict between Ms. Mey's interests and the interests of the class.   In fact, by investigating, filing, and vigorously prosecuting this case, she has

demonstrated a desire and ability to protect class members' interests.  She has elected not to focus on her individual claims in this matter, but instead is standing up for others who, like her, have been subjected to unlawful telemarketing for the benefit of POS.  There is perhaps no better example of Ms. Mey's interest in protecting the rights of the class exists than her refusal to accept an individual offer of judgment in this case offering her the maximum statutory damages for her claim. Instead, she has taken on multiple dispositive motions, substantial written discovery and document requests, and a deposition.  In this way, Ms.  Mey has repeatedly demonstrated her willingness the place the interests of the class above her own. *See, e.g.*, Doc. 420, ***Mey v. Monitronics Int'l Inc.***, No. 13-md-02493 (N.D. W. Va.) (declining $50,000 offer of judgment on individual claim); Doc. 54, ***Mey. v. Frontier Comms. Corp.***, No. 13-cv-01191 (N.D. W. Va.) (declining $6,400 offer of judgment on individual claims).

Just as Ms. Mey is committed to the prosecution of this case, so too are her lawyers, who have requested appointment as class counsel. Fed. R. Civ. P. 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and instructs the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  Ms. Mey's counsel are well-qualified to protect the interests of the class.

Accordingly, this Court finds that the named plaintiffs and their counsel are able to fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."

The first factor under Rule 23(b)(3) requires that the questions of law or fact common to all class members predominate over questions pertaining to individual members. *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. at 239. Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.

"The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart*, 255 F.3d at 147 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004).

As the Fourth Circuit has explained, Rule 23(b)(3)'s predominance standard is distinguished from Rule 23(a)(2)'s more lenient commonality standard because the "predominance inquiry focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation." *Adair*, 764 F.3d at 366 (citing *Amchem*, 521 U.S. at 623). That is to say, the "common conduct" must have a "bearing on the central issue in the litigation." *Id*.

Under that standard, this case is tailor-made for class treatment. It hinges on three questions: (1) does the equipment used to call the members of the class qualify as an autodialer under the TCPA, (2) is POS liable for Venture Data's illegal conduct, and (3)

were the Defendants' violations willful and knowing.  These common questions necessarily predominate over issues requiring individualized proof, because the Court is aware of no issues requiring individualized proof.  While Rule 23(b)(3) requires a showing that common questions predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class.  ***Amgen Inc. v. Conn. Retirement Plans and Trust Funds***, 568 U.S. 455, 133 S. Ct. at 1191 (2013) ("[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'").  In other words, a ruling on these issues, whether in favor of the class or the Defendants, would dispose of all but the administrative aspects of the class claims.

Courts routinely certify TCPA claims.  *See **Ira Holtzman, C.P.A. v. Turza***, 728 F.3d 682, 684 (7th Cir. 2013) (recognizing that class certification is normal in TCPA cases because the main questions are common to all recipients); ***Krakauer v. Dish Network, LLC***, 311 F.R.D. 384, 394-95 (M.D. N.C. 2015) (holding vicarious liability issue predominated over individual questions in TCPA case); ***Kristensen v. Credit Payment Servs.***, 12 F.Supp.3d 1292, 1307 (D. Nev. 2014) (certifying nationwide class of individuals who received automated calls on their cellular telephones in violation of the TCPA and finding vicarious liability issues predominate because agency issues such as actual authority, ratification, and apparent authority "can be resolved on a class-wide basis").  These holdings are consistent with the Supreme Court's observation that the class certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendant's course of conduct.  *See **Amchem Prods., Inc. v. Windsor***, 521 U.S. 591, 625 (1997); *see also **Djikstra v.***

20

*Carenbauer*, No. 11-152, Doc. No. 127 (N.D. W. Va. Jan. 3, 2013) (Bailey, J.) (certifying class in consumer protection case under West Virginia state law).

As this Court recently held under similar circumstances, "Plaintiffs' class certification proposal . . . allows for the consolidation of recurring common issues which make up the heart of Plaintiffs' case, and are therefore ideal for resolution through the class action mechanism." *Alig v. Quicken Loans Inc.*, No. 5:12-cv-114, Doc. 227, at *29 (N.D. W.Va. June 2, 2016).

Defendant POS argues that individual issues predominate over the issues common to the class.  In support, POS contends that the following are individual issues:

a) whether the number called was in service or disconnected;

b) whether the number called was a landline or cell phone;

c) whether the number called was assigned to a pager or other wireless, non-telephonic device;

d) whether the phone was turned off;

e) whether the phone was out-of-range or in a no-service area;

f) whether the phone line was busy;

g) whether the number was in fact owned by a living person (i.e. many call lists include numbers that are not owned by people—they could belong to businesses, individuals who have passed away, or simply mobile numbers stored for later usage by wireless phone companies);

h) whether the number was owned by a person on the dates in question;

i) whether the person actually received the call (i.e. if their phone was dead or service was poor);

j) whether the person has proof that he or she received the call (i.e. there was no billing record);

k) whether the person blocked the call; and

l) whether the person actually answered the phone.

POS contends that these issues would require 121,000+ mini-trials. This Court does not agree. It is well-settled that a violation of the TCPA does not require receipt of the call. The section of the TCPA at issue, 47 U.S.C. § 227(b)(1)(A)(iii), provides that it is unlawful to "make any call" to a cellular phone using an autodialer, without reference to whether the call is completed or received. Further, it creates a private right of action "based on a violation of this subsection," § 227(b)(1)(3), in contrast to other provisions of the TCPA that provide a private right only to one who has "received" a call. See 47 U.S.C. § 227(c)(5). Accordingly, courts have held that it is the act of initiating a call, whether or not it was received, that gives rise to liability for violations of § 227(b). *See, e.g., Satterfield v. Simon & Schuster*, 569 F.3d 946, 953, n.3 (9th Cir. 2009) ("Congress used the word 'call' to refer to an attempt to communicate by telephone."); *Ashland Hosp. Corp. v. Serv. Employees Intern. Union*, 708 F.3d 737, 742 (6th Cir. 2013) (adopting definition of call from *Satterfield*); *Castro v. Green Tree Servicing*, 959 F.Supp.2d 698, 720 (S.D. N.Y. 2013) ("[T]he TCPA clearly restricts the making of any call using an automatic telephone dialing system to a cellular phone,. . .[a]ccordingly, for purposes of Plaintiffs' TCPA claim, it is immaterial whether the Plaintiffs picked up all of Defendants' calls or whether several of the calls went unanswered.").

Also in accord are *Warnick v. Dish Network LLC*, 2014 WL 12537066 U.S. Dist. LEXIS 138381, at *15 (D. Colo. Sept. 30, 2014) (same); *Lucas v. Telemarketer*, 2013 WL

22

4536872, at *3 (S.D. Ohio Aug. 27, 2013) ("this Court concludes that a violation occurs upon the initiation of the call, regardless of whether a message is left"); *Fillichio v. M.R.S. Assocs.*, 2010 WL 4261442, *3 (S.D. Fla. October 19, 2010) ("the prohibition in the TCPA applies to phone calls placed to cellular telephone numbers even if the intended recipient does not answer the calls.  It is the mere act of placing the call that triggers the statute"); *Joffe v. Acacia Mortg.*, 211 Ariz. 325, 330 (Ct. App. Ariz. 2005) ("It is the act of making a call, that is, of attempting to communicate to a cellular telephone number using certain equipment, that the TCPA prohibits.  Whether the call had the potential for a two-way real time voice communication is irrelevant").

To the extent that the POS argument about the failure to "establish an injury" for each class member is a backdoor challenge to the standing of the absent class members, that argument fails too, because it is also well-settled that, "[i]n a class action, the court analyzes the injuries alleged by the named plaintiffs, not unnamed members of the potential class, to determine whether the plaintiffs have Article III standing." *Khan v. Children's Nat'l Health Sys.*, 188 F.Supp.3d 524, 528 (D. Md. 2016) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975) and *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)); see also *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) ("In a class action, we analyze standing based on the allegations of personal injury made by the named plaintiffs."). This Court has already concluded — twice — that Ms. Mey has constitutional standing under *Spokeo*. See *Mey v. Venture Data, LLC*, 2017 WL 1193072 at *2-3 (N.D. W.Va. March 29, 2017) (denying motion for summary judgment on standing grounds and citing earlier rejection of standing argument at motion to dismiss stage).  And even if the individual class members'

23

standing were at issue, this Court has held that unanswered calls can create a risk of harm sufficient to give rise to Article III standing. *See Mey v. Got Warranty, Inc.*, 193 F.Supp.3d 641, 648-49 (N.D. W. Va. 2016) (noting that driving while distracted due to a cell phone call is a common cause of automobile accidents).

POS' most significant issue with class certification is whether the class is ascertainable. The existence of an "ascertainable" class is an implied prerequisite of Rule 23. Importantly, however, it is not necessary that the plaintiff be able to identify every class member at the class certification stage. Rather, a proposed class is ascertainable if it can be "readily identif[ied] . . . in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 368 (4th Cir. 2014).

Ms. Mey's proposed class satisfies this requirement. First, it is defined solely by reference to the following objective criteria: (1) whether Venture Data placed a call to an individual's cellular phone line on certain dates; (2) whether the call was placed using the Pro-TS or CFMC dialer; and (3) whether the calls were part of a POS survey. *See Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *5 (S.D. Cal. Sept. 5, 2013) (finding the proposed class in a TCPA case ascertainable because "[w]hether a customer received an autodialed or artificial/prerecorded call may be determined objectively").

POS contends that the fact that plaintiff's expert has identified all the call numbers in the class is insufficient - rather the plaintiff must show the method which will be used to identify the persons who comprise the class.

In this case, each requirement for class membership is an objective one. The class members are (1) persons, (2) to whom Venture Data placed a call (3) on a cellular line, (4)

24

using specified dialing equipment, (5) on particular dates.  There is nothing subjective, vague, or unknowable about any of those criteria.

Further, the class members are readily identifiable without resort to burdensome individualized fact finding.  It is telling that POS does not cite a single case requiring the identification of class members' names prior to certification.  On the other hand, federal district courts have consistently certified classes under the TCPA identified, as here, only by telephone numbers. In **Birchmeier v. Carribean Cruise Line, Inc.**, 302 F.R.D. 240, 245-46 (N.D. Ill. 2014), the district court rejected an ascertainability challenge and certified a TCPA class that was at the time of certification, known only by a list of 970,000 phone numbers.  The **Birchmeier** court cited an earlier opinion, **Boundas v. Abercrombie & Fitch Stores, Inc.**, 280 F.R.D. 408, 417 (N.D. Ill. 2012), which recognized that a court need not ascertain "absent class members' actual identities . . . before a class can be certified" so long as the class members could be identified in the claims administration process.  Many other courts have certified similar classes in TCPA cases.  *See, e.g.,* **Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.**, 821 F.3d 992, 997 (8th Cir. 2016) (holding, in TCPA case, that "logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable"); **Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.**, 757 F.3d 540, 545 (6th Cir. 2014) (list of telephone numbers was "objective data satisfying the ascertainability requirement"); **Avio, Inc. v. Alfoccino, Inc.**, 311 F.R.D. 434, 442 (E.D. Mich. 2015) ("Plaintiff possesses a list of numbers to which the fax was sent, and it is certainly feasible to determine which individuals and businesses received the faxes at those numbers.").

Indeed, a district court within the Fourth Circuit recently tried a TCPA class action to verdict based only on a list of telephone numbers. [Doc. 193-1, *Krakauer v. Dish Network, LLC*, Nov. 14, 2016) ("The Court plans to remove from the upcoming trial any issues as to whether a particular phone number is associated with a particular person. Such issues are not conducive to a class-wide trial and can be resolved post-trial using procedures to be determined later.").

In this case, it appears that there will be no need for "mini-trials" to link the phone numbers that have been identified to the names of actual class members.  Like the *Birchmeier* court noted, numerous reliable databases exist from which a class administrator can accurately identify names and addresses based on a list of telephone numbers.  *See* 302 F.R.D. at 247-48.

This Court is also familiar with the abilities of such class administrators, having recently approved notice plans in two other TCPA class actions. *See Mey v. Got Warranty, Inc.*, No. 15-101, Doc. 141 (N.D. W. Va. April 16, 2017); *Mey v. Patriot Payment Group*, No. 15-27, ECF No. 123 (N.D. W. Va. April 6, 2017).  Furthermore, while they have failed to turn over the information in discovery, the identity of the call recipients is known to the defendants themselves, who obtain their calling lists from voter registration files.  *See* Doc. 193-2, Deposition Tr. of Bill McInturff, pp. 66:10-69:16 ("i360 has a national voter – an upgrade or independent national file, and we order the sample,

the people you're going to call.").

This Court finds the class to be ascertainable.

Rule 23(b)(3) also requires the court to find that the class action instrument would be superior to, not just equal to, other methods of adjudication.  The four factors listed

below (interest in controlling individual prosecutions, existence of other related litigation, desirability of forum, and manageability) are simply a guideline to help the court determine the benefit of the proposed class action.  Advisory Committee's Notes to Fed.R.Civ.P. 23." **Hewlett v. Premier Salons, Intern., Inc.**, 185 F.R.D. 211, 220 (D. Md. 1997) (Chasanow, J.).

"The first factor identified in the rule is 'the interest of members of the class in individually controlling the prosecution or defense of separate actions.'  Fed.R.Civ.P. 23(b)(3)(A).  'This factor has received minimal discussion in Rule 23(b)(3) actions.' **Buford,** 168 F.R.D. at 361 (quoting 1 *Newberg on Class Actions* § 4.29).  According to the drafters of the rule:

> The interests of individuals in conducting separate lawsuits may be so strong
> as to call for denial of a class action.  On the other hand, these interests may
> be theoretic[al] rather than practical; the class may have a high degree of
> cohesion and prosecution of the action through representatives would be
> quite unobjectionable, or the amounts at stake for individuals may be so
> small that separate suits would be impracticable.

Advisory Committee's Notes to Fed.R.Civ.P. 23."  **Hewlett**, at 220-21.

This case falls into the latter category, considering the likely relatively small potential individual recoveries, and fact that no other cases appear to have been filed.

"Under Rule 23(b)(3)(B), the court should consider the 'extent and nature of any litigation concerning the controversy already commenced by or against members of the class.'  This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits.  7A *Federal Practice and Procedure* § 1780,

27

at pp. 568-69.  'If the court finds that several actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate since, unless the other suits can be enjoined, which is not always feasible, a Rule 23 proceeding only might create one more action. . ..  Moreover, the existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action.  Rather than allowing the class action to go forward, the court may encourage the class members who have instituted the Rule 23(b)(3) action to intervene in the other proceedings.'  *Id.* at 569-70."  ***Hewlett***, at 221.

This factor is, in this case, a non-factor, since this Court has been made aware of no other lawsuits against the defendants concerning this issue.

Rule 23(b)(3)(C) requires the court to evaluate the desirability of concentrating the litigation in a particular forum.  This appears to be a non-factor, inasmuch as no other districts are under consideration.

"The last factor that courts must consider in relation to superiority is the difficulty that may be 'encountered in the management of the class action.'  Fed.R.Civ.P. 23(b)(3)(D). 'Of all the superiority factors listed in Rule 23, *manageability* has been the most hotly contested and the most frequent ground for holding that a class action is not superior.'  ***Buford***, 168 F.R.D. at 363 (quoting 1 *Newberg on Class Actions* § 4.32).  Some courts have said, however, '[t]here exists a strong presumption against denying class certification for management reasons.'  *Id.* (citing ***In re Workers' Compensation***, 130 F.R.D. 99, 110 (D. Minn. 1990); ***In re South Central States Bakery Prod. Antitrust Litig.***, 86 F.R.D. 407, 423 (M.D. La. 1980))."  ***Hewlett***, at 221.

28

"The manageability inquiry includes consideration of the potential difficulties in identifying and notifying class members of the suit, calculation of individual damages, and distribution of damages.  *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1304 (9th Cir. 1990);  *Maguire v. Sandy Mac, Inc.,* 145 F.R.D. 50, 53 (D. N.J. 1992);  *Kernan* [*v. Holiday Universal, Inc.*]*,* 1990 WL 289505 at \*7 [D. Md. Aug. 14, 1990];  *In re Folding Carton Antitrust Litig.,* 88 F.R.D. 211, 216 (N.D. Ill. 1980)."  *Hewlett,* at 221-22.

In *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003), the Fourth Circuit stated:

> First, it appears likely that in the absence of class certification, very few claims would be brought against TPCM, making "the adjudication of [the] matter through a class action ... superior to no adjudication of the matter at all."  *See* 5 *Moore's Federal Practice* § 23.48[1] (1997).  Thus, class certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action.  As the Supreme Court put the matter, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Amchem,* 521 U.S. at 617 (citation omitted).

348 F.3d at 426.

In this case, the plaintiff's claims are easily susceptible to resolution on a classwide basis.  In the event that the class would become unmanageable, this Court can decertify the class.  *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d at 426 (4th Cir. 2003); *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 184 (4th Cir. 1993).

29

A consistent theme of the POS response is that a TCPA class action is somehow inherently unmanageable. Not only does this claim clash with the majority view that class certification in TCPA cases is "normal," it is also inconsistent with very recent experience from within this circuit.

In 2015, Judge Eagles of the Middle District of North Carolina certified a class action alleging Do-Not-Call violations under the TCPA. *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D. N.C. 2015). As here, the defendants protested that individual issues would make a trial all-but-impossible to conduct. Through a series of pretrial orders, however, Judge Eagles designed an efficient, collaborative process that winnowed and organized the remaining factual disputes prior to trial. Ultimately, in January 2017, the case was tried to verdict through just seven live witnesses in only four days of testimony. The verdict sheet, resolving the claims of more than 18,000 class members and more than 50,000 calls, was only two pages long. [Doc. 193-4, Jury Verdict].

As the *Krakauer* trial demonstrated, class actions do not have to be complicated. This case may proceed in much the same way. Vicarious liability could be determined with a handful of corporate witnesses. The ATDS issue is subject to uniform expert testimony. Prima facie evidence establishing the calls to the class members' cellular telephones can be presented through the testimony of a single expert, and if there is evidence to rebut the plaintiffs' expert, it can be organized and presented categorically — although notably, POS has presented no such evidence nor disclosed an expert of its own.

Rule 23(g) requires that a court certifying a class also appoint class counsel. The Rule directs a court to consider several factors, including "[t]he work counsel has done in

identifying or investigating potential claims in the action; [c]ounsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [c]ounsel's knowledge of the applicable law; and [t]he resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C)(i).

Proposed class counsel are qualified and able to represent the class. Bailey & Glasser in particular is well-versed in class action litigation.  Jason Causey and the attorneys of Bordas & Bordas are also experienced consumer class action litigators.

For the reasons stated above, Plaintiffs' Motion for Class Certification [Doc. 135] will be granted.  This Court will conditionally certify the following class:

> All persons in the United States to whom, on June 11, August 19, or September 9, 2014, Venture Data placed a call on his or her cellular telephone line, using the Pro-T-S or CFMC dialer, and as part of a Public Opinion Strategies survey.

### III.    Defendant Public Opinion Strategies, LLC's Motion for Leave to File Surreply

A surreply may only be filed with leave of court in this district, Local Rule 7.02(b)(3), and, within this Circuit, they are "generally disfavored." *EEOC v. Freeman*, 961 F.Supp.2d 783, 801 (D. Md. 2013); *see also Susko v. Cox Enterprises, Inc.*, 2008 WL 4279671, at *2 (N.D. W.Va. 2008) (Stamp, J.) (denying leave where "defendants did not raise any new material in their reply to their motion to dismiss").  A surreply is permitted only "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D. Md. 2003); *see also F.D.I.C. v. Cashion*, 720 F.3d 169, 176 (4th Cir. 2013) (affirming district court's refusal to accept sur-reply where the reply brief "did not raise a new legal theory or new evidence," explaining that a surreply is not justified simply because its proponent "failed to

anticipate how" the other party "would respond").

In this case, this Court would have tended to deny leave to file a surreply.  This Court, however, finds the content of the surreply as well as the arguments in Plaintiff Diana Mey's Opposition to Public Opinion Strategies' Motion for Leave to File Sur-Reply [Doc. 202] to be helpful to the Court.

This Court is aware that POS is arguing that the plaintiff should not have hidden its response in its opposition to the Motion for Leave, and POS is correct.  The Catch 22, however, is that the plaintiff would have had to await a ruling on the motion seeking leave to file the surreply to request leave to file a response.  Had plaintiff not included her argument in the Opposition, this Court would have directed the plaintiff to file a response.

Defendant Public Opinion Strategies, LLC's Motion for Leave to File Surreply [**Doc. 197**] is **GRANTED**.

## IV.    Defendant Public Opinion Strategies, LLC's Motion to Exclude Plaintiff's New and Untimely Expert Declaration

In this Motion, POS seeks to exclude a supplemental report filed by plaintiff's expert, Jeffrey Hansen.  This supplemental report was filed in response to POS' argument that a mere attempt to call someone does not establish an injury under the TCPA.  Mr. Hansen's supplemental analysis was provided to support her alternative response to POS — namely, that even if she were required to show that the calls to individual class members were connected, POS is wrong that she would be technically unable to do so.  To aid the Court's understanding, the expert's supplemental analysis shows that it can be done as a technical matter — again, even though the TCPA does not require it.

This Court has ruled *supra* that it is well-settled that a violation of the TCPA does not

require receipt of the call.  Accordingly, the supplemental report is not relevant and was not considered by the Court.  The Motion will be denied as moot.

For the reasons stated above:

1.      Plaintiff's Motion for Class Certification [**Doc. 135**] is **GRANTED**;

2.      Defendant Public Opinion Strategies, LLC's Motion to Exclude Plaintiff's Expert Report and Testimony [**Doc. 190**] is **DENIED**;

3.      Defendant Public Opinion Strategies, LLC's Motion for Leave to File Surreply [**Doc. 197**] is **GRANTED**; and

4.      Defendant Public Opinion Strategies, LLC's Motion to Exclude Plaintiff's New and Untimely Expert Declaration [**Doc. 198**] is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**:  June 6, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE