**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

**DIANA MEY,** individually and on
behalf of a class of persons and
entities similarly situated,

      **Plaintiff,**

   **v.**          **CIVIL ACTION NO. 5:14-CV-123**
                 **(BAILEY)**

**VENTURE DATA, LLC and**
**PUBLIC OPINION STRATEGIES,**

      **Defendants.**

**ORDER DENYING PUBLIC OPINION STRATEGIES, LLC'S**
**AND VENTURE DATA, LLC'S MOTIONS FOR SUMMARY JUDGMENT**

Pending before this Court are Defendant Public Opinion Strategies, LLC's Motion for Summary Judgment [Doc. 206] and the Motion for Summary Judgment of Venture Data, LLC, Or, in the Alternative, to Stay Proceedings [Doc. 208]. On May 15, 2017, Venture Data filed a joinder adopting the arguments of POS [Doc. 210]. This was in addition to Venture Data filing its own memorandum [Doc. 209]. Both motions have been fully briefed and are ripe for decision. For the reasons stated below, the Motions will be denied.

When this Court first reviewed Public Opinion Strategies, LLC's ("POS") Motion, the famous quote from that distinguished legal scholar, Lawrence Peter Berra[1], came to mind - "It's like deja vu all over again."

On December 2, 2015, POS filed a motion seeking summary judgment based on its assertions that (1) Ms. Mey lacked standing; (2) POS could not be held vicariously liable

---

[1] Aka Yogi.

1

because it was not a telemarketer, and Venture Data was not its agent; (3) Venture Data did not use an ATDS to place the calls to Ms. Mey; and (4) the TCPA was unconstitutional as applied.

On March 29, 2017, the Court denied the POS motion for summary judgment in a 41-page decision. ***Mey v. Venture Data***, 2017 WL 1193072 (N.D. W.Va. March 29, 2017). With respect to each POS contention, the Court held as follows:

• Ms. Mey had standing because unwanted phone calls cause concrete harm, and Ms. Mey's efforts to hold the Defendants' accountable for their conduct "do not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Id*. at *9.

• POS was not entitled to summary judgment on vicarious liability, because a "jury could conclude that POS exerted control over Venture Data's calling operations sufficient to give rise to an agency relationship, and that the call to Ms. Mey was well within the scope of Venture Data's authority." *Id*. at *13.

• Likewise, the Court held that a jury could conclude that Venture Data used an ATDS to call Ms. Mey. This finding was based not only on Venture Data's admission—an independent ground for denying summary judgment—but also expert testimony that the specific dialing systems used by Venture Data have the characteristics of an ATDS. *Id*. at * 14-16.

• Finally, the Court held that the TCPA was not unconstitutional as applied to POS's calling activities, because the TCPA is a permissible, content-neutral

2

regulation that serves significant government interests and leaves open ample alternative channels for communication. *Id.* at *18.

POS's successive motion for summary judgment raises only arguments that were available when the first motion was filed. *See **Brown v. City of Syracuse***, 673 F.3d 141, 147 n.2 (2d Cir. 2012) ("[S]uccessive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion"). POS has not employed a single method of discovery since filing its last summary judgment motion, so there is no new found evidence at issue — POS just wants another bite at the apple. In any event, no "federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment." ***Essex Ins. Co. v. Foley***, 827 F.Supp.2d 1326, 1329 n.2 (S.D. Ala. 2011). "Indeed, it sets bad precedent to allow parties to file serial motions for summary judgment because repetitive motion practice undermines both the Court's and the parties' interests in efficiency and finality." ***Wootten v. Com. of Virginia***, 2016 WL 4742336, at *3 (W.D. Va. 2016) (Moon, J.). "Courts routinely deny such motions on those grounds." *Id*.

As the Western District of Virginia recently explained, its refusal to consider the successive motion for summary judgment "largely mirror[s]" its rationale for denial of reconsideration, because such motions are "not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously available facts, or otherwise award a proverbial second bite at the apple to a dissatisfied litigant." *Id*. (quoting ***Wootten v. Virginia***, 168 F.Supp.3d 890, 893 (W.D. Va. 2016). "In sum," the court explained, "a party who fails to present his strongest case in the first

instance generally has no right to raise new theories or arguments in a motion to reconsider.  So it is here with the successive summary judgment motion." *Id*. (quotations and citation omitted).

In denying the first POS motion for summary judgment, the Court recognized "Venture Data's own candid admission" that it used an ATDS to dial Ms. Mey's cellular phone, and held that "this fact alone [was] sufficient to preclude summary judgment on the ATDS issue."  ***Mey v. Venture Data, LLC***, 2017 WL 1193072, at *15 (N.D. W.Va. Mar. 29, 2017).  Nothing about this fact has changed.

Venture Data's admission was unambiguous.  In response to one of Venture Data's unsolicited calls, Ms. Mey asked the Venture Data interviewer a straightforward question — "Do you guys use an autodialer to make these calls?" — to which the interviewer provided a straightforward answer: "Yes."  *See Id.* at *15.  And in case there was any doubt as to what Ms. Mey meant by the word "autodialer," another Venture Data interviewer clarified: "I did not dial the number. The computer randomly generates the number to call." ***Id***.

In an effort to undo this damage, Venture Data offers a self-serving declaration from its chief executive, Jeffrey Call, who makes a variety of carefully-crafted statements intended to contradict his employees' earlier statements.  But at best, Mr. Call's declaration creates a dispute about the characteristics of the system used to dial Ms. Mey.  And as this Court held before, "a reasonable juror could credit the interviewers' candid admissions over subsequent denials made for the purposes of litigation."  ***Id.***

Venture Data and POS also now claim, for the first time and without explaining why,

that the employees' admissions are inadmissible hearsay.  (Doc. 209 at 6 n.2; Doc. 207 at 23).  Venture Data adds that the statements were "not authorized."  But a statement need not be "authorized" to qualify as a party admission.  It is only necessary that the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed," which is clearly the case here.  Fed. R. Evid. 801(d)(2)(D). In addition, the Venture Data employees could be called as witnesses at trial.

In its first motion for summary judgment, POS actually cited the 2015 FCC ruling in support of its motion. (See Doc. 138 at 14).  Now, in its second bite at the apple, POS has reversed course and contends that it would be "unfair" to "retroactively" apply the authority on which it once relied.  Instead, POS now asks the Court to employ a "present capacity" standard that the FCC has never adopted.

The plain language of the 2015 FCC ruling made clear that, in rejecting the "present capacity" standard, the Commission was breaking no new ground.  Right up front, the FCC stated its intention to "confirm[]" that "callers cannot avoid obtaining consumer consent for a robocall simply because they are not 'currently' or 'presently' dialing random or sequential phone numbers."  ***In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991***, 30 F.C.C. Rcd. 7961, ¶ 2 (2015) (emphasis added).  Indeed, the 2015 Order was rendered in response to industry requests for "clarification" regarding the ATDS definition. ***Id***. at ¶ 11.  And in response, the FCC held:

> We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently

used for that purpose, including when the caller is calling a set list of consumers.

*Id*. ¶ 10 (emphasis added).

Elsewhere in the analysis, the FCC explained that it was only "reiterate[ing] what the Commission had previously stated regarding the parameters of the definition of 'autodialer,'" *id*. ¶ 8, and expressly noted that its decision was based on "past Commission interpretations." *Id*. at ¶ 22.

As a result, it is no surprise that courts across the country, including district courts within the Fourth Circuit, have routinely applied the 2015 FCC Ruling to calls that occurred in 2014 or before.  In fact, earlier this year, the Seventh Circuit held that the 2015 FCC Order's clarification of the ATDS definition applied to text messages that were sent as far back as 2009.  *See Blow v. Bijora, Inc.*, 855 F.3d 793, 801 (7th Cir. 2017).  And in *Cartrette v. Time Warner Cable, Inc.*, Judge Flanagan of the Eastern District of North Carolina applied the 2015 FCC Order to calls that occurred in 2013-14, specifically noting that the ruling did not create new law, but merely "reaffirm[ed]" and "clarified" the FCC's earlier decisions concerning the definition of an autodialer. 157 F.Supp.3d 448, 455 (E.D. N.C. 2016).  Numerous other courts have held the same.  *See Pinchem v. Regal Med. Grp., Inc.*, 2017 WL 449172, at *3 (C.D. Cal. Jan. 9, 2017) (Wright, J.) (applying 2015 Ruling to 2013-15 faxes); *Reichman v. Poshmark, Inc.*, 2017 WL 436505, at *5 (S.D. Cal. Jan. 3, 2017) (applying 2015 Ruling to Jan. 2015 text message);  *Strauss v. CBE Grp., Inc.*, 173 F.Supp.3d 1302, 1309 (S.D. Fla. 2016) (2014 calls); *Luna v. Shac, LLC*, 122 F.Supp.3d 936, 940 (N.D. Cal. 2015), appeal dismissed (Nov. 20, 2015) (2014 calls);

***Stewart v. T-Mobile USA, Inc.***, 124 F.Supp.3d 729, 730 (D.S.C. 2015) (Duffy, J.) (2013-14 calls); ***Sherman v. Yahoo! Inc.***, 150 F.Supp.3d 1213, 1219 (S.D. Cal. 2015) (2013 calls).

Against this tide, POS's novel argument relies exclusively on a single, unpublished opinion from a district court in Pennsylvania. (See Doc. 207 at 13-18, citing ***Dominguez v. Yahoo! Inc.***, 2017 WL 390267 (E.D. Pa.  Jan. 27, 2017)). The ***Dominguez*** district court has already been reversed once by the Third Circuit on an ATDS issue, see ***Dominguez v. Yahoo!, Inc.***, 629 F. App'x 369, 372-73 (2015), and may be reversed again, given its rejection of the Third Circuit's instruction to apply the 2015 FCC Order on remand. *See* ***Dominguez***, 2017 WL 390267 at *6.  A more recent, better-reasoned opinion rejects the ***Dominguez*** holding.  In ***Smith v. Stellar Recovery, Inc.***, the court addressed the identical retroactivity argument, but held that the "2015 TCPA Order is merely a clarification of the existing rules regarding autodialers, and therefore should be applied retroactively." ***Smith v. Stellar Recovery, Inc.***, 2017 WL 1336075, at *4 (E.D. Mich. Feb. 7, 2017), report and recommendation adopted 2017 WL 955128 (E.D. Mich. Mar. 13, 2017).

Since the 2015 FCC Order did not create any new rules, but only clarified existing law, the POS argument that the 2015 Order cannot be applied to the claims in this case must be rejected.

Even if the 2015 FCC Order were not applied to the claims in this case, the defendants would still not be entitled to summary judgment, because a jury could conclude that the equipment used to dial Ms. Mey qualifies as an ATDS under pre-2015 rulings, and even under the defendants' "present capacity" test.

First, as POS has conceded, the FCC's 2008 Order, which is indisputably applicable

to the claims in this case, held that "the key feature of an ATDS 'is the capacity to dial numbers without intervention.'" [Doc. 121 at 17 (quoting In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling, 23 FCC Rcd. 559, 556 (F.C.C. Jan 4, 2008) (emphasis added)].

Second, the 2008 Order and cases applying it made clear that a "predictive dialer" is an ATDS. In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling, 23 FCC Rcd. 559, 556 (F.C.C. Jan 4, 2008); *see also, e.g., Moore v. Dish Network L.L.C.*, 57 F.Supp.3d 639, 652 (N.D. W. Va. 2014) (Groh, J.). And as the Court has already recognized, Ms. Mey's expert will offer testimony that the Venture Data dialers are predictive dialers.  *See Venture Data*, 2017 WL 1193072, at *15.

Third, there is substantial evidence that Venture Data's dialers would qualify as ATDS even under the Defendants' preferred "present capacity" test.  POS self-defines "present capacity" as "the capacity to function as an ATDS at the time the calls to the plaintiff were made." [Doc. 207 at 19-20].  Venture Data admitted to making a computer-generated, autodialed call to Ms. Mey, in the present tense, while it was on the phone with her.  In addition, the Court's prior order specifically noted that, despite POS efforts to distinguish between the different "modes" used for calling landlines versus cellular numbers, Venture Data conceded that its callers switched back-and-forth between modes, using the same exact equipment, during the same shift.  *Venture Data*, 2017 WL 1193072, at *16.  That is evidence that the equipment had the "present capacity" to function as an autodialer when the calls to Ms. Mey were made.

In its first motion for summary judgment, POS argued, without support, that only

"sellers" and "telemarketers" could be held vicariously liable for their agents' violations of the TCPA. [See Doc. 138 at 6]. Under POS's logic, anyone else is free to violate the TCPA through a third-party without fear of consequences. This Court rejected that argument and held that a jury could find POS liable for Venture Data's TCPA violations under theories of actual agency, ratification, or both. **Venture Data**, 2017 WL 1193072 at *13-14 (citing **In re Dish Network, LLC**, 28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013)).

POS repeatedly asserts that "vicarious liability has **never** been applied to non-sellers and non-telemarketers." [Doc. 207 at 12 (emphasis in original)]. POS must have forgotten about **Campbell-Ewald v. Gomez**, in which the United States Supreme Court recognized the vicarious liability of a non-seller and non-telemarketer for violations of the TCPA. *See* --- U.S. ---, 136 S. Ct. 663, 674 (2016). In that case, the Campbell-Ewald Company was accused of violating the TCPA by engaging a third-party to send unsolicited recruiting text messages for the United States Navy. *Id*. Like POS, Campbell-Ewald was neither a seller nor a telemarketer. Nonetheless, the Supreme Court ruled that Campbell-Ewald could be vicariously liable for its agent's conduct: "the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations. The Ninth Circuit deferred to that ruling, and we have no cause to question it." *Id*. (citations omitted).

POS's argument is premised entirely on the fact that the **Dish Network** ruling refers primarily to sellers and telemarketers. But **Dish Network** is not the sole source of vicarious liability for TCPA claims. Before the FCC confirmed the existence of vicarious liability under the TCPA in **Dish Network**, and before the Supreme Court's approval of that ruling

in *Campbell-Ewald*, many courts had already recognized vicarious liability for TCPA claims, in no way limited to the telemarketing context.

In *Mey v. Honeywell*, which preceded *Dish Network*, Judge Copenhaver relied on established precedent, in particular *Meyer v. Holey*, 537 U.S. 280 (2003), to conclude that a TCPA defendant could be held vicariously liable for its agent's violations of the TCPA. *Honeywell*, 2013 WL 1337295 at *6 (S.D. W.Va. March 29, 2013). In *Meyer*, the Supreme Court had affirmed the imposition of vicarious liability under the Fair Housing Act, reasoning that when Congress creates what is, in effect, a tort action, "it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules" including traditional principals of vicarious liability. 537 U.S. at 285. According to Judge Copenhaver, the same was true of the TCPA. *Honeywell*, 2013 WL 1337295 at *6.

Judge Copenhaver also relied on the rulings of fellow district courts that recognized vicarious liability for TCPA violations based on the presumption that Congress intended to incorporate ordinary tort-related vicarious liability rules into the TCPA. *See Honeywell*, 2017 WL 1337295, at * 5, citing *Thomas v. Taco Bell Corp.*, 879 F.Supp.2d 1079, 1084 (C.D. Cal. 2012) and *Accounting Outsourcing, LLC. v. Verizon Wireless Personal Communications, L.P.*, 329 F. Supp. 2d 789, 806 (M.D. La. 2004)). Since *Honeywell*, other courts have concluded the same*. See, e.g., Jackson v. Caribbean Cruise Line, Inc.*, 88 F.Supp.3d 129, 137-38 (E.D. N.Y. 2015) ("Here, the Court need not consider the overarching purpose of the TCPA or the FCC's ruling in *Dish Network*. Rather, the Court relies on Supreme Court precedents regarding the type of statutory language necessary

10

to displace common law principles.").

At bottom, POS bases its entire argument on the fact that the **Dish Network** ruling refers primarily to sellers and telemarketers. But that is simply because **Dish Network** was a telemarketing case, and most TCPA cases are telemarketing cases. The FCC's reasoning in **Dish Network** applies equally to non-telemarketing violations of the TCPA, and the FCC never expressly limited its ruling to telemarketing calls. Indeed, the **Dish Network** ruling expressly incorporated the **Meyer** rule that federal tort statutes customarily incorporate general common law principles of vicarious liability. *See Dish Network*, 28 FCC Rcd. 6574, at ¶¶ 29 n.84 & 33 n.99.

Moreover, POS offers no explanation for the absurd result that would obtain should some TCPA violators be held vicariously liable for their TCPA violations, while others skate. Many Courts applying the **Dish Network** ruling have summarized its purpose as ensuring that "a company may not outsource its responsibility to abide by federal law, including statutes meant to protect American consumers." *See, e.g., Lawrence v. Am. Med. Collection Agency*, 2015 WL 12762024, at *4 (M.D. Fla. Nov. 16, 2015); *see also Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012) (observing that without vicarious liability, a "well-heeled entity" could engage an "impecunious dialer" to violate the TCPA, while getting off "scot-free"). That applies whether the violator is a telemarketer, debt collector, pollster, or anything else.

Venture Data also and alternatively asks for an open-ended delay while the Court of Appeals for the D.C. Circuit reviews the FCC's 2015 Order in *ACA International v. Federal Communications Commission*, Case No. 15-1211. However, defendant fails

11

to provide a compelling argument as to how a ruling in *ACA International* could affect this case when, as discussed above, the defendants would not be entitled to summary judgment on the ATDS issue, notwithstanding the 2015 Order.

In addition, it is unlikely the D.C. Circuit will give *Venture Data* the result for which it hopes. Again, as explained above, in the 2015 Order, the FCC took pains to emphasize that it was breaking no new ground. Thus, insofar as Venture Data hopes for a change in the current FCC interpretation of the meaning of an "automated telephone dialing system," it would require overturning the entire body of FCC rulemaking on the subject. The D.C. Circuit has no jurisdiction to review, much less overturn wholesale prior rulemaking because the time to petition for review of FCC rulings extending as far back as 2003 has long-since expired. And in any event, the D.C. Circuit may only set aside the FCC's definition of "automated telephone dialing system" if it finds that the statutory language is both unambiguous and contrary to the FCC's definition. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 982 (2005). In the face of years of consistent FCC interpretation of the statute, it is highly unlikely that the D.C. Circuit will conclude that the FCC is not only wrong, but so wrong that the language is unambiguous in a way directly contrary to the FCC's view.

Even if the petitioners in *ACA International* have limited success, it is more likely (although still unlikely) that the D.C. Circuit would vacate just the 2015 FCC Declaratory Ruling and return the question to the status quo existing before July 2015, which defined an automated telephone dialing system as a system that has the capacity to dial numbers randomly or sequentially, regardless of whether or not it was currently being used in that

12

manner.  Once again, therefore, the outcome of the D.C. Circuit appeal will not impact the law governing this case with regard to a definition of an "automated telephone dialing system."

Finally, Venture Data fails to account for why it waited nearly two years to seek this stay.  *ACA International* has been pending since June 10, 2015.  In that time, the parties have produced tens of thousands of documents, taken depositions nationwide, litigated multiple dispositive as well as class certification motions, and pre-trial filings are underway.  Since the purpose of a stay is efficiency, federal courts decline to stay district court proceedings at such an advanced stage.  *See e.g., 454 Life Scis. Corp. v. Ion Torrent Sys.*, 2016 WL 6594083, at *4 (D. Del. Nov. 7, 2016) ("[W]hen a request for review comes after discovery is complete or nearly complete, and a trial is imminent, a stay is less likely to be warranted.");  *Oracle Corp. v. Parallel Networks, LLP*, 2010 WL 361851, at *3 (D. Del. Sep. 8, 2010) ("A request for stay at this late stage of the litigation is generally prejudicial to [the non-movant's] investment in trial preparation and does not comport with the notion of judicial efficiency.").

It is for these reasons that most courts have denied similar requests to stay by defendants.  *See, e.g., Toldi v. Hyundai Capital Am.*, 2017 WL 736882 (D. Nev. Feb. 23, 2017); *Williams v. Ocwen*, (M.D. Fla., Feb. 21, 2017); *Terec v. Reg'l Acceptance Corp.*, 2017 WL 662181 (M.D. Fla. Feb. 17, 2017);  *Konopca v. Ctr. for Excellence in Higher Educ., Inc.*, 2016 WL 4644461, at *3 (D. N.J. Sept. 6, 2016);  *Sliwa v. Bright House Networks, LLC*, 2016 WL 3901378, at *5 (M.D. Fla. July 19, 2016); *Caudill v. Wells Fargo Home Mortg., Inc.*, 2016 WL 3820195, at *3 (E.D. Ky. July 11, 2016); *Edwards v.*

*Oportun, Inc.*, 193 F.Supp.3d 1096, 1102-03 (N.D. Cal. 2016); *Jones v. AD Astra Recovery Servs., Inc.*, 2016 WL 3145072, at *6 (D. Kan. June 6, 2016); *Schwyhart v. AmSher Collection Servs., Inc.*, 182 F.Supp.3d 1239, 1243 (N.D. Ala. 2016); *Mancini v. JPMorgan Chase Bank, N.A.*, 2016 WL 1273185, at *1 (S.D. Fla. Mar. 28, 2016); *O'Hanlon v. 24 Hour Fitness USA, Inc.*, 2016 WL 815357, at *5-6 (N.D. Cal. Mar. 2, 2016); *Rodriguez v. DFS Servs., LLC*, 2016 WL 369052, at *3 (M.D. Fla. Feb. 1, 2016); *Rivera v. Exeter Fin. Corp.*, 2016 WL 374523, at *3 (D. Colo. Feb. 1, 2016); *Kafatos v. Uber Techs., Inc.*, 2016 WL 97489, at *2 (N.D. Cal. Jan. 8, 2016); *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4-5 (N.D. Cal. Jan. 8, 2016); *Nussbaum v. Diversified Consultants, Inc.*, 2015 WL 5707147, at *3 (D. N.J. Sept. 28, 2015).

For the reasons stated above, Defendant Public Opinion Strategies, LLC's Motion for Summary Judgment **[Doc. 206]** and the Motion for Summary Judgment of Venture Data, LLC, Or, in the Alternative, to Stay Proceedings [**Doc. 208**] are **DENIED**.  In addition, Plaintiff Diana Mey's Motion to Strike the Additional POS Motion For Summary Judgment [**Doc. 212**] is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

**DATED:** July 6, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

14